United States District Court Southern District of New York

Rhawn Joseph, Ph.D. pro se

408-286-9833

677 Elm St. San Jose, CA  95126

RhawnJoseph@gmail.com

--------------------------------------------}

Rhawn Joseph, Ph.D.                    }

Plaintiff                              }

                                   }

    v                }

                                   }

                                   }

NASA, Springer Nature America          }

Inc.,  Springer Nature Academic        }

Publishing LLC.                        }

Defendants                             }

_____}

Case Number:

Filed On:

Judge:

PLAINTIFF'S CIVIL COMPLAINT:

FRAUD AGAINST THE COURT *FRCP 60(d)(3)*,

VIOLATION OF THE PUBLIC TRUST DOCTRINE,

VIOLATIONS OF FIRST AMENDMENT,

FRAUD, HOAXES, IDENTITY THEFT *18 U.S. Code §*
*1001, § 1031, § 1038; New York CVP Article 30, R3016 ,*
*NYPL Article 190;*

DEMAND FOR DECLARATIVE & INJUNCTIVE RELIEF

-Plaintiff's Declaration

-Demand for Jury Trial

-Demand To Set Aside Judgment

-Demand To Order Default, Summary Judgement against Springer
Nature America Inc., Springer Nature Academic Publishing LLC.

-Federal Questions and Violations of the U.S. Constitution and Bill of
Rights (42 USC § 1983; 28 U.S.C. § 1331, §1343; 42 U.S.C. § 1983)

-Federal Subject Matter Jurisdiction 28 U.S.C. § 1338(a)

-Subject Matter Jurisdiction FRCP 60(d)(3)

## INTRODUCTION & HISTORY: A SHORT PLAIN STATEMENT

1. Despite spending billions of U.S dollars on the exploration of Mars, NASA has explicably refused to equip any of the Mars rovers with life detection technology. NASA refuses to search for life, refuses to examine any specimens for life, and refuses to acknowledge the evidence of past and current life on Mars published by over 36 scientists, including those employed by NASA, the Center for Astrophysics at Harvard, the University of California Dept. of Astrophysics and so on. If there is life on Mars is a question NASA does not want asked and does not want answered. Why? Martian organisms and their DNA will be worth hundreds of billions of dollars and NASA, and its for-profit partners, via its Mars Sample Return program, intend to secretly transport Martian organisms, and their DNA, to Earth where they will be secretly distributed, stolen and sold, and in so doing exposing this planet to Martian pathogens and possible plague and mass extinctions. NASA's Sample Return Program is a violation of the *Public Trust Doctrine (*secured and embodied by the Ninth and Tenth Amendment and the Vesting, Nobility, and Posterity Clauses of the Constitution) and which secures and protects our life-sustaining natural resources and biosphere.   Because an informed public would become terrified and oppose this dangerous "get-rich" scam, NASA has conspired with the Springer Nature group to defame and discredit Dr. Rhawn Gabriel Joseph, the world's leading "life on Mars" expert. NASA has conspired with the Springer Nature group to create a fake "click through" agreement that enabled these criminals to escape liability, seize Dr. Joseph's copyright and "chill" and violate  his 1st Amendment rights to free speech, and to discredit his discoveries, and that of his international scientific team who have found evidence of bacteria, algae, lichens, spores and fungi on Mars that were photographed by NASA growing out of the ground, increasing in size, shedding spores, engaging in behavior and moving to different locations-- pictorial and sequential photographic evidence obtained directly from NASA's official image-depository.

2. NASA and the Springer Nature Group entered into this conspiracy after the editors of the journal "Astrophysics and Space Science" (published by Springer Nature), accepted for publication and made public a preprint of Plaintiff's scientific article "*Life on Mars"* that was based entirely on NASA photographs obtained from NASA's website (https://www.researchgate.net/publication/340610633). "*Life on Mars"* documented that vast colonies of thousands of mushroom-fungus-lichen-shaped organisms, attached by stems to hundreds of rocks and oriented skyward similar to photosynthesizing lichens on Earth, were growing within "Eagle Crater" in the equatorial regions of Mars.  "*Life on Mars"* also documented that NASA and its contractors had committed fraud and faked data after the instruments on the Mars rover Opportunity failed and/or were no longer calibrated properly due to various malfunctions.

Thus, NASA and its team resorted to fraud and falsely claimed these vast colonies of mushroom-lichens were "hematite spheres" when there is absolutely no resemblance to hematite, their instruments were not capable of detecting hematite and no hematite was detected. Instead, they falsely claimed  these mushroom-lichens where hematite spheres as based temperature when the temperature sensors had failed and they had no way of determining or measuring temperature; and falsely claiming to have measured "ice opacities" when no ice was observed; and creating false colors and then altering, changing, modifying, and deleting spectra obtained from these false colors until they claimed this altered spectra resembled spectra observed when hematite was photographed in a controlled laboratory setting on Earth, when other investigators admitted the data was a "poor fit" for hematite.

3. The discoveries of Plaintiff's team as detailed in "*Life on Mars*" humiliated and embarrassed NASA and proved NASA and its contractors had engaged in fraud and created a hoax (the hematite hoax). The discoveries of Plaintiff and his team, also threatened to derail NASA's Mars Sample Return "get-rich" scheme. NASA and the Springer Nature group then retracted "*Life on Mars*"  and withdrew it from publication after a preprint was made available and reporters showed excited interest. "*Life on Mars*" was then posted by Plaintiff at the website Researchgate (https://www.researchgate.net/ publication/340610633) where it quickly surpassed over 20,000 readers whereas most articles only receive a few hundred readers.  NASA, therefore, conspired with the Springer Nature group to destroy this Plaintiff's reputation and prevent him from publishing additional evidence.

4. Dr. Joseph is well aware of the despicable conduct of NASA personnel, and realizing they had partnered with the Springer Nature group to destroy his reputation, he immediately terminated all agreements pertaining to the printing of his article  "*Life on Venus*" which was the  most read, most popular article ranked # 1 at the website of the Springer Nature journal "Astrophysics and Space Science." Although the Springer Nature group agreed to terminate all agreements and to issue a refund, they instead continued to host "*Life on Venus*" on their website, then added defamatory content then added "Retracted Article" on every page, thus defaming Plaintiff and making it appear he had engaged in fraud: "Studies are... retracted because of fraud..because they are fraudulent... because pervasive and systematic fraud... Retraction is the most serious sanction that can be applied to a published paper..." (*Journal of Medical Ethics Retractions in the scientific literature, 37, 2011, see also Wager E,Barbour V, Yentis S, et al. Retractions: guidance from the Committee onPublication Ethics (COPE).Maturitas 2009; 64:201-203*). Likewise, as stated on the Springer Nature website, articles are only "RETRACTED" when the authors have been found guilty of fraud.

5. Yet, as admitted by Defendants  Springer Nature America Inc. and Springer Nature Academic Publishing LLC. (AKA Springer Nature) Plaintiff had never been suspected of and there was no evidence of fraud. Then, in order to escape liability, NASA and Springer Nature conspired to commit Fraud Against the Court; i.e. they created a fake "click through" agreement that they claimed gave then permission to defame Plaintiff; an agreement Springer Nature's attorneys now admit lacks any click through capabilities and is thus, fake (Exhibit 15). Laughably, pathetically, they claim the real contract is on a server but they can't find it.  However, when posted on a server, Springer Nature click through agreement is still obviously fake (Exhibit 9).

6. The purpose of this conspiracy is to discredit this Plaintiff and his discoveries, published in "Advances in Astronomy" "Open Astronomy" and "Astronomy and Astrophysics" and convince the public, the scientific community, and editors and publishers of scientific journals that they should never publish or believe Plaintiff. NASA's purpose is to keep the public ignorant about NASA's plans to return living Martian organisms to Earth where they will be sold and distributed to NASA's "for profit" partners.

7. In May of 2021, the journal *Advances in Microbiology,* after extensive peer review accepted and put into into production a scientific article published by this Plaintiff and his team that includes R. Schild of the Center for Astrophysics at Harvard, X. Wei of the Chinese Academy of Science; Dr. Wolowski of the Polish Academy of Science, and a dozen other scientists. The article is titled:  "*Fungi on Mars: Evidence of Growth and Behavior From Sequential Photographs*" (https://www.researchgate.net/ publication/351252619) and documented that fungi and fungus on Mars are growing out of the ground, increasing in size, changing shape and moving to new locations and shedding spores on the ground--as based on sequential photos from NASA's own Mars-photo depository. This is one of the greatest discoveries in space science and the preprint garnered nearly 400,000 readers in just a few days.

8. NASA and its goon squad immediately contacted reporters, informing them that Plaintiff had been found guilty of fraud and his research had been retracted by Springer Nature because, they allege, Plaintiff engaged in fraud; and they overwhelmed the editors at the journal of *Advances in Microbiology,* complaining and threatening to destroy their reputation and demanding that they cancel publication; and publication was cancelled. Thus NASA chilled speech and violated the first Amendment rights of this Plaintiff, i.e. freedom of speech, and freedom of the press.

9. NASA's most recent attack on this Plaintiff's 1st Amendment right to free speech, is also an attack on the *Public Trust Doctrine* and threatens all life on this planet.

10. The District Court legitimized this defamatory scam and based its decision to dismiss Joseph

vs Springer Nature (JvSN Dkt74) entirely on this fake and fraudulent html "click through agreement" and "license" that Defendants Springer Nature's attorneys filed with the District Court in the case of Joseph v Springer Nature et al (JvSN Dkt55, Defendants' Exhibit 2).  Inexplicably, the DC chose to ignore Dr. Joseph's insistence that the "click through" agreement was fake, that it was impossible to sign, and that he had never seen it before and that it never existed before this case was filed.  Instead, the DC chose to believe these fraudsters and their high powered prestigious law firm.

11. The Court must now recognize the fact that Defendants Springer Nature America Inc. and Springer Nature Academic Publishing LLC. (Springer Nature), have now admitted  (Exhibit 15 page 7) to filing with the District court in the case of Joseph v Springer Nature et al (JvSN)  a fake "click through" agreement consisting entirely of pages of html code that, as they now admit, lacks any means to "click" "check" "sign" or to signify agreement; as also documented by Exhibits 9 11-14. To quote Springer Nature's attorneys  (Exhibit 15, page 7)" "the click-through agreement attached to Defendants' motion to dismiss (Doc. No. 57-2), does not include the full HTML code and thus does not appear as it would on the live webpage with the accompanying Springer logos, headers, and most importantly here, the "accept" button or "check box."

12. As documented by an actual hard copy of their html document as it would appear on a website, Defendants' "click through" agreement is so obviously fake only an imbecile would judge it to be legitimate (Exhibits 9, 11-14)--which is why Springer Nature refused to provide a hard copy to the District Court. Caught "red handed"  and confronted with the hard copy, Springer Nature's attorneys (Exhibit 15 page 7) have now admitted that Plaintiff could have never agreed to their click through agreement, and that it was created and modified after Dr. Joseph filed suit in the case of JvSN.

13. Because this fake "click through" agreement has now been completely repudiated as also documented by exhibits, the Court must rule that Springer Nature committed" fraud against the court" as defined by *FRCP 60(d)(3)* and the decision in the case of JvSN, must be vacated, judgement set aside and a default summary judgment on all counts must be awarded to Plaintiff.  Nor must Plaintiff file a motion as the Court has the obligation and authority to default and set aside judgment under the "saving clause" according to the  Advisory's Committee's discussion of *Rule 60(d)(3)*: "under the saving clause, fraud may be urged as a ground for relief... And the rule expressly does not limit the power of the court . . . to give relief under the savings clause. As an illustration of the situation, see *Hazel-Atlas Glass Co. v. Hartford Empire Co.* [322 U.S. 238 (1944)]." It is well established that the Courts have the inherent authority to enter a default judgement and to default a litigant who has  committed fraud against the court

and corrupts the judicial process (*See Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989); Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir. 1991); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11–12 (1st Cir. 1985); Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983); Eppes v. Snowden, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986); Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 638 N.E.2d 29, 31 (Mass. 1994).* A refusal by this Court to find the Springer Nature guilty of fraud against the Court, would in turn be a fraud against the Court and would be evidence this Court has joined in a conspiracy to violate this Plaintiff's 1st 5th, and 14th Amendment rights and the *Public Trust Doctrine*.

14. Plaintiff, Dr. Rhawn Gabriel Joseph, hereby files suit against **(A)** Springer Nature America Inc. and Springer Nature Academic Publishing LLC (AKA Springer Nature),  for identity theft and the tort of fraud (*18 U.S. Code § 1001; New York CVP Article 30, R3016 , NYPL Article 190)* and fraud against the Court *(FRCP 60(d)(3)* and whose attorneys admit to filing a "click through" agreement with the Court that lacked any click through or agreement capabilities (Exhibit 15, page 7).   **(B)** Plaintiff files suit against NASA for the tort of fraud *(18 U.S. Code § 1001; 18 U.S. Code § 1031; New York CVP Article 30, R3016 , NYPL Article 190*) and for conspiring with the Springer Nature Group and Defendants Springer Nature to defame this Plaintiff and violate his 1st Amendment rights to free speech; and **(C)** against NASA for fraud, hoaxes *(18 U.S. Code § 1038; 18 U.S. Code § 1031; New York CVP Article 30, R3016 , NYPL Article 190*) and violation of the *Public Trust Doctrine*; i.e. NASA's dangerous Mars Sample Return Program.  **(D)** These Martian organisms and their DNA will be worth hundreds of billions of dollars. Hence, the success of this Sample Return "get-rich" scheme required that Plaintiff and his discoveries of life on Mars--published in prestigious peer reviewed scientific journals--be discredited, his speech "chilled" and his 1st Amendment right to free speech curtailed. NASA has now successfully convinced all established (indexed) scientific journal that they should not publish Dr. Joseph's research, which NASA and Springer Nature allege,  has been discredited, repudiated and retracted by the Springer Nature Group as authorized by their fake and fraudulent "click through" agreement.

**Federal Courts Have Legitimized Faked Contracts and Legalized a "Malignant Cancer"**

15. The Federal Judiciary by inexplicably legalizing an obviously fake "click through" contract have not only put the *Public Trust* at risk, but created a cancer whose malignancy may engulf every citizen, business, elected official and judge on the Federal Bench. If the Court refuses to find Springer Nature guilty of fraud against the Court, then innumerable fake "click through" agreements can be entered into evidence or the public arena, and anyone can be falsely depicted as agreeing to contracts they

had never seen before, or to having accepted bribes, the sex trafficking of children, and entering into conspiracies to obstruct and pervert justice. Those who are made to appear to have "agreed" to these fake contracts may well include the Federal Judges who sanctified Springer Nature's fake "click through" agreement and this fraud against the Court, i.e. Cronan, Cabranes,  Lohier and Lee.

**Federal Judges Cronan, Cabranes,  Lohier and Lee, Click Agree to Accept Bribes, Pervert Justice?**

16. The Federal Courts have unleashed a cancer that threatens to consume them, i.e.  Exhibit 16: two fake click through contracts that are as fake as the "click through" agreement the District and Appellate Courts have legitimized in the case of Joseph v Springer Nature; and which depict four Federal judges (Cronan, Cabranes,  Lohier and Lee) as having agreed to yet another fake Springer Nature "click through" agreement; and having agreed to accept substantial bribes to pervert and obstruct justice, to endanger the *Public Trust*, and rule in favor of Springer Nature and violate this Plaintiff's constitutional rights. Like the fake click through agreement these four judges legitimized in Joseph v Springer Nature; these additional "click through" agreements lack any means to "click" "check" sign, or indicate agreement; but according to these four judges, these additional "agreements" must be considered completely legal even if Cronan, Cabranes,  Lohier and Lee claim they had never seen these agreements before--just as Joseph had never seen the obviously fake "click through" agreement they deemed to be completely valid. Hence, according to the legal reasoning of Cronan, Cabranes,  Lohier and Lee, they must have accepted bribes, and are guilty of obstructing and perverting justice, as based on these "click through" agreements (Exhibit 16) which have been posted online in order to make hardcopy exhibits and so that comparisons can be made with the fake click through agreement inexplicably sanctified by the Court (http://brainmind.com/AAADefendantsClickThroughAgreeement.html).

**The Federal Court Must Set Legal Standards for "Click Through" Agreements**

17. It is incumbent that this Court (A) set minimal standards for what constitutes a legally binding "click through" contract and agreement, and (B) rule that Springer Nature's "click through" agreement/ contract does not meet even the minimal requirements of what constitutes a legal contract, and (C) rule that Springer Nature's "click through" agreement/contract is in all respects fake and fraudulent as it lacks any means to "click" or "check mark" or "agree" or to "sign" or to indicate that this Plaintiff agreed to the terms specified (Exhibits 9, 11-14)--as admitted by the Springer Nature (Exhibit 15, page 7); and that (D) Defendants Springer Nature committed fraud against the Court. (E) The Court must  "give relief under the savings clause (see *Hazel-Atlas Glass Co*. *v*. *Hartford Empire Co*. [322 U.S. 238 (1944)]" and via it own inherent authority (*See Aoude v*. *Mobil Oil Corp*., 892 F.2d 1115, 1119 (1st Cir. 1989); Combs

*v*. *Rockwell Int'l Corp*., 927 F.2d 486, 488 (9th Cir. 1991); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co*., 771 F.2d 5, 11–12 (1st Cir. 1985); *Wyle v. R.J. Reynolds Indus., Inc*., 709 F.2d 585, 589 (9th Cir. 1983); *Eppes v. Snowden*, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986); *Rockdale Mgmt. Co. v. Shawmut Bank, N.A*., 638 N.E.2d 29, 31 (Mass. 1994)*, and issue a summary judgment against Springer Nature on all counts of the original Joseph vs Springer Nature complaint (1:20 CV 4672:) and as specified in this complaint for "fraud against the Court" (*Rule 60(d)(3)*).

### EXHIBITS: PROVING FRAUD AGAINST THE COURT FRCP 60(d)(3)

**Fraud Against The Court FRCP 60(d)(3)**

18. The District Court (and the 2nd Circuit Court of Appeals) based the dismissal of Plaintiff's complaint without leave (Joseph v Springer Nature (JvSN) Dkt74), entirely on a fake and fraudulent "click through agreement" and "license" that Defendants Springer Nature's attorneys filed with the District Court (JvSN Dkt55; Document 77-2, JvSN-Defendants' Exhibit 2). Pursuant to FRCP 60(d)(3) Plaintiff Rhawn Joseph provides Exhibits that conclusively prove that Defendants Springer Nature Academic Publishing LLC, Springer Nature America Inc, and their attorneys (Jeremy Chase, Robert Balin)  have committed fraud against the District Court and admit to filing a fake "click through" agreement that they created and modified after the case of Joseph v Springer Nature was filed.

**EXHIBIT 1: Plaintiff's JvSN Dkt52 "Open Choice" (Exhibit 1 filed with the DC)**

19. Defendants emailed a *"Life on Venus"* Contract to Plaintiff on 10/29/2019. Plaintiff did not agree to this contact until 11/6/2019, and and confirmation of the Contract on 11/6/2019 was filed with the Court (JvSN Dkt52 Exhibit 1).  The 10/2019 proposed Contract states: "This message is to let you know that your article * Article title: Life on Venus and the Interplanetary Transfer of Biota From Earth... has gone into production... Please indicate if you would like to: * order Open Choice, i.e. publish the article as open access. The published version will then become freely available for anyone worldwide... and to *transfer the copyright of your article (if you do not order Open Choice)".

20. As confirmed in Exhibit 1, which is the  document Springer Nature emailed to Plaintiff on 11/6/2019 and which Plaintiff filed with the Court (JvSN Dkt52 Exhibit 1) Plaintiff paid $3,333.00 for the "Open Choice" license and this payment allowed Plaintiff to retain the copyright to "*Life on Venus*."

21. As documented by Exhibits 2-4, "Open Choice" confers the license on a non-profit corporation, "Creative Commons" which is totally independent of Springer Nature.  This is proof that "life on Venus" was never licensed to Springer Nature and Plaintiff was assigned the copyright.

**EXHIBIT 2: Defendants "Open Choice" Contract**

**22. Exhibit 2** is a screenshot of Springer Nature's website: (A) "Open Choice:" (B) "The copyright remains with you." (C) "After your article has been accepted for publication, you will receive an email... you can opt for your article to be published open access via Open Choice." (D) We will issue you an invoice." As proved by Exhibit 1 (JvSN Dkt52, Exhibit 1) the Defendants emailed an invoice on 11/6/2019 documenting Plaintiff chose and paid over $3,300 for "Open Choice" and retained the copyright.

23. By contrast, the date of 10/29/19 was erroneously inserted by Springer Nature into the top of their fake "click through" agreement. As documented by Exhibit 2, Plaintiff did not enter into any agreement until 11/6; and that agreement has no resemblance to the fake click through agreement Defendants filed with the Court.

**EXHBIT 3:  Licensed Assigned to Non-Profit "Creative Commons"**

**24. Exhibit 3** is a screenshot of Defendants website in which it is stated: "Open Choice articles are published under the liberal Creative Commons Attribution 4.0 International (CC BY) license."

25. "Creative Commons" is a non-profit corporation that once assigned an attribution license which allows anyone to read and quote from the article free of charge, so long as they give proper attribution to the author and owner of the copyright, i.e. this Plaintiff. (See also Exhibit 4, and CreativeCommons.org.)

26. As detailed in Exhibits 1,3,4 by choosing "Open Choice" (JvSN Dkt52, Exhibit 1) the Defendants Springer Nature (Publisher) and the Plaintiff agreed to "license" "*Life on Venus*" to the independent non-profit corporation "Creative Commons." This refutes Springer Nature's fraudulent claim that Plaintiff  "granted the publisher of ApSS an irrevocable license."

**EXHBIT 4: LICENSEE IS A NON-PROFIT CORPORATION.**

**27. Exhibit 4** is a screenshot of the Creative Commons website (https://creativecommons.org/about/): "Creative Commons is a nonprofit organization."

28. The corporate Defendants (Springer Nature) are "for profit" companies and have no legal relationship or association with "Creative Commons" which is completely independent and non-profit.

**EXHIBIT 5: Google Search Also Proves Defendants are Not the Licensee**

**29. Exhibit 5** is "screenshot" of a google search conducted on 9/4/21 of a specific  crucial sentence in the "agreement" Springer Nature filed with the Court (JvSN Dkt55; Document 77-2, Defendants' Exhibit 2) and the Court of Appeals. The Defendants falsely claim they are the licensee and  "*the Author(s) grant the Licensee a non-exclusive, irrevocable and sub-licensable right,*". The google search

(Exhibit 5)  proves this crucial sentence exists only in the Defendants filings with the Court and cannot be found on the Springer.com or SpringerNature.com or any of the Defendants' websites. Plaintiff could never have agreed to something that came into existence only after this case was filed, and when there is no means to agree via click, check box or signature (Exhibits 8,9).

30. Plaintiff's Exhibits previously filed with the Court, (JvSN Dkt52, Exhibit 1), and Exhibits 1-6 prove the license was assigned to the non-profit corporation "Creative Commons."  Defendants, therefore, had no license and no rights to Plaintiff's article, "*Life on Venus*."

**EXHIBIT 6: "the Licensee may retract" Clause Created After Case was Filed**

31. **Exhibit 6** is a screen shot, taken on September 17, 2021, of a google search of the crucial sentence "*the Licensee may retract*" in the alleged "click through" agreement Defendants Springer Nature filed with the court. The google search proves the crucial sentence does not appear on any of the Defendants' websites, as previously documented (JvSN Dkt62, paragraph 41).

32. Exhibit 6 documents that a "License to Publish" contract with the crucial "*the Licensee may retract*" sentence was created and deposited in the Nature.com website, on "11 September 2020" forty one days after Plaintiff filed suit.  "Nature" is part of the Defendants "Springer Nature Group" with the same Board of Directors and attorneys, but is not a named Defendant and is not the publisher  of "*Life on Venus*" according to the Defendants own filings.

33. Plaintiff filed his complaint on June 27, 2020, alleging violation of copyright, defamation, breach of contract,  and other damages (JvSN Dkt1).  Exhibit 6 documents that the the "*the Licensee may retract*" language claimed by the Defendants (JvSN Dkt55; Document 77-2, Defendants' Exhibit 2) was created, deposited and posted in the Nature.com website 41 days after Plaintiff filed suit.

**EXHIBIT 7: Defendants Created the "License to Publish" Contract After Case was Filed**

34. **Exhibit 7** presents a document deposited on "11, 9, 2020 at Nature.com" (9/11/2020) that contains the crucial "*the Licensee may retract*" sentence.  This September 2020 document is a "SpringerNature" "License to publish" contract.  As stated at the bottom, it was created on "09_2020" by "Springer Nature Limited, The Campus, 4 Crinan Street, London, N1 9XW, United Kingdom, 785988" which is also the address of Defendants' solicitor Ms. J Cox.

35. Two days prior, Plaintiff notified the Court on 9/9/20 that he intended to also name solicitor Cox and Springer Nature Limited (address The Campus, 4 Crinan Street, London, N1 9XW, United Kingdom, 785988) as Defendants (JvSN Dkt31). Two days later, and 41 days after Plaintiff filed suit, Cox and Springer Nature created and deposited this "license to publish" agreement and which contains

language nearly identical to the alleged "click through agreement" filed by the Defendants on November 16, 2020, two months later.

36. This  "SpringerNature" "License to publish" was created in London by a London company "Springer Nature Limited" headquartered in the United Kingdom and requires a signature at the bottom. It is not a click through agreement, was created 41 days after Plaintiff filed suit, and contains all the language that subsequently appeared in the "click through" agreement that was filed with the court months later.  Inexplicably it states (**Exhibit 7**): "This agreement shall be governed by, and shall be constructed in accordance with the laws of the State of New York" which is where Plaintiff's lawsuit was filed 41 days earlier and where all the named corporate Defendants reside.  Since this was a contract for Springer Nature in London, then it should have stated "governed by the laws of the UK" not "New York." Thus it was created in response to this lawsuit after it was filed in New York, it was then modified to make it appear that it was a "click through" agreement and not a standard contract, and the words "UK" were changed to read "New York."

37. The "SpringerNature" "License to publish" depicted in **Exhibit 7** also provides three boxes at the bottom; the first requiring the author's signature, the second requiring the author to print their name, and the third box requiring the "date" it was signed. Plaintiff did not sign or agree to this Nature.com document. However, it contains language which Defendants and their attorneys copied, modified and then filed as an html document with the Court. However, it is so inept that they failed to remove the requirement for a signature. In fact, their click through agreement three times requires a signature and that the author sign the click through contract. Yet the click through agreement they filed with the Court was devoid of any means to do so.

**EXHIBIT 8: "Click Through Agreement" Is Fake, Has No Option to "Click" or "Agree" or Sign.**

38. **Exhibit 8** is the Defendants Springer Nature's click through agreement they filed on November 16, 2020 with the Court (JvSN Dkt55; Document 77-2, Defendants' exhibit 2). Springer Nature's "click through" exhibit is not a screen shot or pdf or jpg, but a typed page with html and css computer coding for posting on a website (JvSN Dkt55; Document 77-2, Defendants' exhibit 2). Its terms are nearly identical to the contract created and posted by "SpringerNature" in September; albeit slightly modified and with several crucial differences and inept errors.

39. Contracts require a date and signature a the bottom. The "SpringerNature" "License to publish" contract posted at Nature.com (Exhibit 7) has boxes that requires a date and signature at the bottom.  An examination of **Exhibit 8** (Defendants JvSN Dkt55; Document 77-2, Defendants' exhibit 2), proves there

Joseph v NASA et al                              11

is no click or check box to indicate acceptance, no place to sign and does not contain Plaintiff's signature or an electronic /s/ signature.

40. There is no signature/dating boxes in Springer Nature's exhibit 2 filed with the Court. However, their alleged "click through" agreement nevertheless explicitly states: "the signatory (the Author or the employer) who has signed this agreement has full rights, power and authority to enter into this agreement on behalf of all of the Author(s)." (JvSN Dkt55; Document 77-2, Defendants' exhibit 2). However, there is no place to sign or agree.

41. As Springer Nature's own exhibit 2 proves, Plaintiff never signed or initialed or dated or printed his name on the "agreement" and "license" filed by the Defendants (JvSN Dkt55; Document 77-2, Defendants' exhibit 2) because this was impossible. This inept "agreement" and license filed by the Defendants with the Court, provides no means to "agree" sign, click, check mark or to indicate acceptance, and were faked after this lawsuit was filed and ineptly created after the fact to deceive and commit fraud against the courts.

**EXHIBIT 9: "Click Through Agreement" PDF & Online: No Click or Check Options to Agree**

42. Plaintiff complained to the DC and in his Reply Brief, that the Defendants filed only filed several sheets of paper with html and css website coding, but failed to provide a screen shot, jpg, pdf or website in which depicted their "click through agreement" online on their website. There is no hard copy. This was not an oversight by the Defendants, but part of a deliberate plan by the Defendants and their attorneys, to hide the fact that this "agreement" and "license" is devoid of any means to  sign, or click or check mark "agree" or indicate acceptance.

**43. Exhibit 9** includes a photograph and a PDF of Defendant JvSN Dkt55 "click through agreement" after it had been uploaded to Plaintiff's BrainMind.com website (http://brainmind.com/ AAADefendantsClickThroughAgreeement.html). As can be seen in Defendants exhibit 2 (Plaintiff/ Appellant's Exhibit 8) this click through agreement has html and css coding for upload to a website.

44. Exhibit 9 illustrates and documents that Springer Nature's alleged agreement has no "button" no "checking box" no "I agree" no "I accept" and no coding linking this page to an IP address.

45. An IP address indicates from what computer the Springer Nature website was accessed and leads back to whomever agrees to terms specified, as is required by basic contract law governing click through agreements (*Reuters Thomas Law*). However, there is no coding to detect or register an IP address and no IP address is indicated.

46. Although it three times requires an actual signature there is no place to sign. The only

functional link that anyone can click on, takes the viewer to the Creative Commons website which also has no "button" no "checking box" no "I agree" no "I accept."

47. Springer Nature's click through agreement is in all respects amateurish and fake. Examination of Exhibit 9 and  Defendants "click through agreement" filed with the court, (JvSN Dkt55; Document 77-2, Defendants' exhibit 2)  proves that if it had actually existed on Defendants website, no one would have been able to sign or otherwise agree to it as those options are not available. This was an amateurish attempt to commit fraud.

**EXHIBIT 10: No Click Through Licensing Agreement on Defendants Journal Website**

**48. Exhibit 10** is the first of a series screenshots, beginning with the first page of the sequence of an article submission (on September 16, 2021) to the Defendants' website hosting Defendants' journal "Astrophysics and Space Science."  Plaintiff's article "*Life on Venus*" is a "review" article and therefore "review" was chosen as "Article Type" (first page of sequence).  A dashboard with links appears at the top throughout the entire sequence. An examination of Exhibit 10 proves here are no links to any "agreements" or "licenses" on this dashboard or on any of these pages.

**EXHIBIT 11: Springer Nature's Attorneys Admit the Alleged Click Through Agreement is Fake.**

49. Springer Nature's attorneys in page 7 of their Opposition to Plaintiff's appeal and Opposition to rule 60 motion filed with the Appeals Court is reprinted here as Exhibit 11.  Springer Nature admits they misled the Court and their exhibit 2 "click through agreement" is not a "click through agreement" as they had alleged. It is a document that is based on a hard copy contract they created 41 days after Plaintiff filed suit; and admit to have redacted, modified, altered, and changed by inserting and including Plaintiff's name at the top of this fake agreement.

50. Springer Nature failed to to produce what they allege to be a correct and unaltered "click through agreement" allegedly signed or agreed to by this Plaintiff, and this is because it does not exist. Springer Nature and their attorneys, Chase and Balin, have been unable to provide a webpage link to that server, or pdf, screen shot, or complete or hard copy of this allegedly agreement. Plaintiff provided the Court with screen shots from their websites (e.g. Exhibits 2,7); yet they are unable to do the same, and this is proof their alleged "click through agreement" does not exist; and this is why they can't produce it. Obviously, the Defendants and their attorneys committed fraud against the Court.

51. Springer Nature misled the court, failed to re-tract false evidence and this constitutes fraud against the court (*Estate of Adams v. Fallini, No. CV 24539 (Nev. 5th Dist. Ct. Aug. 6, 2014), at 1 at 3 at 6 at 7); Kupferman v Consolidated Research Mfg., Corp., 459 F.2d 1072, 1078 (2nd. Cir. 1972); H.K.*

*Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1119 (6th Cir. 1976).*

52. When caught in their lies, Springer Nature now admit there are no "check boxes" no "click boxes" no "I agree" as is standard for all click through agreement (Thompson Reuters Practical Law). And there is no space for a signature despite the explicit requirement for signatures on pages 1,4,5 of Springer Nature's JvSN exhibit 2 (see Exhibits 11,13,14 attached). Clearly, Springer Nature's JvSN exhibit 2 is a modified version of the signature-requiring hard copy of a contract they created 41 days after this case was filed but with the signature and dating boxes deleted.

53. It is standard procedure for a "click through agreement" to have the check box and other information signifying agreement at the end of a document--proving it has been read (*Thompson Reuters Practical Law*). Instead (Exhibit 11) Springer Nature's attorneys (page 7 Exhibit 11) make the strange claim that "Plaintiff's name and time-stamp of his clicking his acceptance to the agreement are included at the top of the agreement" and not at the bottom. Note their inadvertent employment of "included" the synonyms of which are: "Add, Insert, Put in, Append." By their own admission (page 7) they inserted ("included") Plaintiff's name (but no signature) which they "included at the top" --as exemplified by Defendants' exhibit 2 in Joseph vs Springer Nature et al..

54. As documented by Springer Nature's JvSN exhibit 2 and Plaintiff Exhibits 8-9,11, there is no html or css or any type of coding or programming surrounding "the top" that would allow Plaintiff to type in his name, or to date, or to time stamp this alleged "click through agreement." What they included at the top also has the wrong date and is completely separate and different from the remainder of the document which has html code inserted.

55. Because the coding for online signatures and the insertion of times, dates, names, etc, to agreements are so html-complicated and subject to the "whims" of internet browsers, almost all companies, and courts, including the Second Circuit Court of Appeals and *United States Supreme Court (pursuant to Supreme Court Rule 29.7, November 13, 2017*) require respondents to submit a signed hard copy, or to /s/ sign, date, and provide all information within a "fill-in-PDF" that is then uploaded to a website or mailed in.

56. Springer Nature's attorneys (Exhibit 11 page 7) have admitted that Plaintiff could have never agreed to their exhibit 2 document they submitted to the Courts. To quote Springer Nature's attorneys (page 7)" "the click-through agreement attached to Defendants' motion to dismiss (Doc. No. 57-2), does not include the full HTML code and thus does not appear as it would on the live webpage with the accompanying Springer logos, headers, and most importantly here, the "accept" button or "check box."

57. Defendants are required, by law, to provide and file with the Court a true copy; which they failed to do. They are unable and failed to provide the Court with a link to a "live webpage." And this is because it does not exist.

58. What the record and exhibits clearly indicate: Forty one days after Plaintiff filed his complaint,  Springer Nature created a fake analog contract and inserted language that would provide a defense against Plaintiff lawsuit filed in New York. Defendants then deleted the signature, print name, and dating box at the bottom of this analog contract. This is why their exhibit 2 contains no signature and no signature box despite three times requiring a signature. This is why it lacks all html codes that are mandatory for a click through agreement. Caught "red-handed" and as they now admit, their exhibit 2 click through agreement is devoid of all features that are mandatory for all contracts and is fake.

**EXHIBITS 12-14: Springer Nature's JvSN Exhibit 2 Dissected: Fakery and Fraud**

59. Plaintiff has added "red box" "red arrows" and "white on black comments" to exhibits 12-14 (Defendants JvSN exhibit 2). Plaintiff draws the Court's attention to the top of the page of Exhibit 12. Defendants' (page 7) claim "Plaintiff's name and time-stamp of his clicking his acceptance to the agreement are included at the top of the agreement." Not only is it at the top, and not at the bottom where its placement is legally required, but there is no html coding that would provide a time stamp or allow Plaintiff to type in his name or any of this information. By their own admission, they added this information at the top. As can be seen on Exhibit 11 (Defendants exhibit 2) Defendants also inserted the date "Tue Oct 29" and are claiming Plaintiff "transferred" all rights on this date when the second page of Plaintiff's Exhibit 1 (confirmation of "Payment of your Open Choice order") proves that Plaintiff did not enter into an agreement for "Open Choice" until November 6, 2019. Defendants faked and inserted the "Oct 29" date and got it wrong.

60. Exhibits 11, 13, 14 (Defendants' JvSN Exhibit 2) documents the alleged "click-through agreement" three times requires a signature, but there is no place to sign. Moreover, "/s/Rhawn Joseph" does not appear anywhere on these exhibits or Defendants exhibit 2.

61. Exhibit 12 (Defendants' Exhibit 2) also includes this sentence: "... published in [insert journal title]." However, no journal title appears and there is no coding that would allow anyone to insert a "journal title" within this alleged click-through agreement.

**EXHIBIT 15: Springer Nature's Admits "Click Through" is Not a Click Through Agreement.**

62. Springer Nature admits the html document they filed lacks any coding that would allow one to click, check, or indicate agreement; and admit they created this "agreement" after this case was filed.

**EXHBIT 16: Fake "Click Through" Agreements that Meet the Legitimacy Standards of the Federal Judiciary: Judges Cronan, Cabranes,  Lohier and Lee Click Agree to Pervert Justice?**

**63. Exhibit 15:** two fake click through contracts that are as fake as the "click through" agreement the District and Appellate Courts have legitimized in the case of Joseph v Springer Nature. These two fake click through agreement can be viewed at and beneath the hard copy of the fake click through agreement filed by Springer Nature (http://brainmind.com/ AAADefendantsClickThroughAgreeement.html) and are equally fake.

64. The two additional; "click through" agreements (Exhibit 15) depict four Federal judges (Cronan, Cabranes,  Lohier and Lee) as agreeing to obstruct and pervert justice, violate this Plaintiff's constitutional rights in return for substantial bribes payable to offshore bank accounts and funds distributed and "laundered" via relatives of these four judges.  These fake agreements also contain language and sentiments typical of Federal Judges, i.e. that Pro Ses are worthless trash not worth the time of the court.

65. Either all three "click through" agreements are fake (i.e. the alleged Joseph agreement and that of these four judges) or all three are legitimate and "prove" --according to the standards of these four judges-- that Cronan, Cabranes,  Lohier, Lee accepted substantial bribes to pervert and obstruct justice.

## ARGUMENT AUTHORITIES

66. NASA engaged in a criminal conspiracy with Springer Nature (*18 U.S.C. § 241*) and these Defendants committed fraud (*18 U.S.C. § 1546*), perverted and obstructed  justice, and NASA intends to expose Plaintiff and other citizens to possible Martian pathogens (*42 U.S.C. § 7408 (a)(1)(A); 42 U.S.C. § 7521(a)(1)*). Springer Nature America Inc. and Springer Nature Academic Publishing LLC ( Springer Nature) by creating and filing a fake "click through" agreement engaged in identity theft and committed the tort of fraud (*18 U.S. Code § 1001; New York CVP Article 30, R3016 , NYPL Article 190*) and fraud against the Court *(FRCP 60(d)(3)*. NASA has committed the tort of fraud (1*8 U.S. Code § 1001; 18 U.S. Code § 1031; New York CVP Article 30, R3016 , NYPL Article 190*) and for committed fraud and hoaxes (*18 U.S. Code § 1038; 18 U.S. Code § 1031; New York CVP Article 30, R3016 , NYPL Article 190*). NASA conspired with the Springer Nature Group and Defendants Springer Nature to defame this Plaintiff and violate this Pro Se Plaintiff's 1st Amendment rights to free speech which is part of a conspiracy to violate the *Public Trust Doctrine*; i.e. NASA's dangerous Mars Sample Return Program.

67. Defendants have defamed and destroyed this Plaintiff's reputation as a scientist, caused him profound personal injury and loss of income, and violated Federal and State law, NASA has violated this

Plaintiff's Constitutional and Civil and 1st, 5th, and 14th Amendment Rights (*42 USC § 1983*). Defendant NASA and its government employees are liable for for civil rights violations and violations of the *Civil Rights Act of 1871* (*42 U.S.C. § 1983*). Furthermore, their frauds, hoaxes, and defamatory schemes serve their "get rich" scheme to harvest and sell Martian organisms and their DFNA, and in so doing they will recklessly endanger the public and have and will violate the *Public Trust Doctrine*.

**Fraud Against the Court**

68. Defendants Springer Nature America Inc. and Springer Nature Academic Publishing LLC. (Springer Nature), have admitted to filing with the Court in the case of JvSN pages of html code that they claimed was "click through" agreement, but which they now admit lacks any means to "click" or to signify agreement (Exhibit 15, page 7). They refused to provide a hard copy because it does not exist. However, by uploading their html document to a website, it becomes obvious Springer Nature's "click through" agreement lacks anyi means for anyone to signify or click or check box agreement (Exhibit)--as Springer Nature now admits (Exhibit).  The DC based its dismissal of Joseph v Springer Nature et al., based entirely on that fake agreement.

69. Springer Nature by filing and faking and making fraudulent claims about "click through" agreements," committed fraud against the District Court and the Second Circuit Court of Appeals *(FRCP 60(d)(3)*. Fraud against the court is generally defined as fraud "directed to the judicial machinery itself... It is thus fraud where... the impartial functions of the court have been directly corrupted." (*Robinson v. Audi Aktiengesellschaft, 56 F.3d 1259, 1266 (10th Cir. 1995)* (citation omitted).

70. According to the Advisory's Committee's discussion of Rule 60(d)(3): "The amendment . . . mak[es] fraud an express ground for relief by motion; and under the saving clause, fraud may be urged as a ground for relief... And the rule expressly does not limit the power of the court . . . to give relief under the savings clause. As an illustration of the situation, see *Hazel-Atlas Glass Co. v. Hartford Empire Co. [322 U.S. 238 (1944)]*."

71. Federal courts have held there is "fraud on the court... where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim..."(*Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)* (citations omitted).

72. Clearly, the District Court was deceived by these the Defendants' fraudulent claims and their filing of a fake "agreement" and "license." The DC trusted and accepted as true anything and everything

the Defendant's attorneys claimed, and based the decision to dismiss on the Defendants' attorneys' false claims and faked "agreement" (JvSN Dkt74); and this constitutes fraud against the Court: "the most egregious misconduct directed to the court itself" requires the following elements: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." (*Herring v. United States, 424 F.3d 384, 386–87 (3d Cir. 2005). 178 Id. at 386*).

73. In *Kupferman v. Consolidated Research & Manufacturing Corp*, the court stated that [w]hile an attorney "should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court." And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court. (*459 F.2d 1072 (2d Cir. 1972); Id. at 1078* (internal citation omitted); see also *H.K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1119 (6th Cir. 1976)*.

74. The Fifth District Court, in addressing fraud on the court focused on the offending party's lawyer: "as an officer of the court, [he] had a duty to not mislead the court or fail to correct a misrepresentation... dishonesty of any attorney is so damaging on courts and litigants that it is considered fraud upon the court" and that "An  officer of the court perpetrates fraud on the court a) through an act that is calculated to mislead the court or b) by failing to correct a misrepresentation or re-tract false evidence submitted to the court." (*Estate of Adams v. Fallini, No. CV 24539 (Nev. 5th Dist. Ct. Aug. 6, 2014), at 1 at 3 at 6 at 7*).

75. The U.S. Supreme Court has ruled that fraud against the court "demands the exercise of the historic power of equity to set aside fraudulently begotten judgments…" including when the "scheme to defraud" is directed at the "Circuit Court of Appeals…" and that District and Appeals Courts are duty bound to set aside and vacate the decisions and judgment of the Court in cases of fraud against the Court (*U.S. Supreme Court, Hazel-Atlas Glass Co. v Hartford-Empire Co., 322 U.S. 238 (1944)*).

76. FRCP 60(d)(3), also authorizes the Appeals Court to provide relief from a judgment and decision, based on its own motion, and without notice, for fraud on the court.

77. The Courts have relied on its own inherent authority, as well as Federal Rules such as Rule 11 to enter a default judgement against a litigant who corrupts the judicial process (*See Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989); Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir. 1991); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11–12 (1st Cir. 1985); Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983); Eppes v. Snowden, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986); Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 638 N.E.2d 29*.

**NASA's VIOLATIONS OF THE PUBLIC TRUST DOCTRINE**

**NASA & Private-for-Profit Companies Intend to Secretly Return Martian Organisms to Earth**

78. NASA has partnered with DARPA, and pharmaceutical and other for-profit-companies, and plans to harvest and retrieve Martian organisms and return them to Earth (NASA's Mars Sample Return Program). Private-for-profit companies and personnel at NASA and other government agencies including DARPA, expect to reap hundreds of billions of dollars in illegal profits from the private and secret sale, theft, and distribution of these organisms--organisms that DARPA also wishes to weaponize. NASA's for profit partners would not invest in worthless, lifeless dirt.

79. As documented by NASA's Inspector General in 2011, NASA administrators and staff stole and secretly sold lunar soil samples and rocks, even as they were being unloaded from returning space craft. For decades NASA administrators lied and covered up these thefts despite allegations from independent "whistleblowers" until finally NASA's Inspector General was forced to investigate. That NASA allows the theft of classified, highly valuable, as well as dangerous material--and then lies about it--has also been well documented by Congress. NASA's own Inspector General determined that NASA's conduct in regard to the safekeeping of the moon rocks was shockingly unprofessional and wrought with fraud, theft, lies, and cover-ups (*Office of Inspector General, NASA 2011*). NASA administrators are thieves and cannot be trusted.

80. NASA knows that the public and government officials will become terrified of possible plague and contagion and will oppose NASA's Mars Sample Return Program and insist on strict oversight and accountability, thus derailing this "get-rich" extremely dangerous scheme. The success of this illegal financial venture requires that Plaintiff and his discoveries be discredited and that recognized scientific journals refuse to publish additional evidence of life on Mars. Therefore, NASA has conspired with Springer Nature to discredit and defame this Plaintiff, so that NASA can continue to claim there is no life on Mars and thus there is no danger.

81. This is not the first time NASA and Springer Nature have conspired to destroy the reputation of a leading scientist and to accuse that scientist of "fraud." As is well documented and public record, Nobel Prize winner, Harold Urey and his team had discovered evidence of fossilized algae in a meteor older than this solar system. NASA harassed, threatened, intimidated and repeatedly demanded that Urey withdraw his article. When Urey refused, NASA paid for several articles to be published by the Springer Nature journal "Nature" accusing Urey of a "deliberate hoax" and "fraud" and in so doing defamed and destroyed Urey's reputation and discredited these discoveries.

82. NASA has known since 1976 that there is life on Mars. NASA has known since 1996 that Mars was inhabited with microorganisms that were fossilized over 3.8 billion years. Over two dozen scientific studies published between 2002 and 2022--many by NASA scientists--have also documented evidence of oxygen and methane production--and both gases are biologically produced--and evidence of past and current life on Mars, including algae, lichens, and fungus that grows out of the ground. NASA pretends that methane and oxygen have some unknown abiogenic source and that all this evidence of current and pas life does not exist and/or -despite being published by over 36 scientists, including those employed by NASA, Harvard, the University of California, the Polish Academy of Science, the Chinese Academy of Sciences, and so on. NASA's refusal to acknowledge and admit there is life on Mars, and its intention to secretly transport these organisms to Earth, is a direct assault on the Public Trust Doctrine. In a worse case scenario, these Martian organisms--via NASA's Mars Sample Return Program--once returned to Earth and sold, stolen, and distributed--pose a catastrophic danger to all life on Earth and as such NASA poses a danger to the public and are enemies of humanity.

**NASA's Violations Of The Public Trust Doctrine**

83. This Plaintiff has inalienable rights guaranteed by the "*Public Trust Doctrine*" and which are secured by the *Ninth Amendment* and embodied in the *reserved powers doctrines of the Tenth Amendment* and the *Vesting, Nobility, and Posterity Clauses of the Constitution*. These rights protect the rights of present and future generations as pertaining to essential natural resources that are vital to the citizens of our nation. These vital natural resources include at least the air (atmosphere), water, seas, the shores of the sea, and wildlife--all of which may be threatened if NASA transports Martian organisms to Earth. The overarching public trust resource is our country's life-sustaining biosphere which NASA will endanger.

84. As sovereign trustees, as part of the Federal government, Defendant NASA had a duty to refrain from engaging in actions which will result in the "substantial impairment" of these essential natural resources and the health of its citizens. The affirmative aggregate acts of Defendant NASA, proves they have repeatedly attempted to discredit the substantial evidence of life on Mars, and failed in their duty of care to safeguard the interests of this Plaintiff and all present and future beneficiaries of the public trust. If Martian organisms are pathogenic, this abdication of duty will abrogates the ability of succeeding members of the Executive Branch and Congress to provide for the survival and welfare of our citizens and to promote the endurance of our nation.

85. As sovereign trustees, the affirmative aggregate acts of NASA, and which includes slander, defamation, libel, fraud, and violations of the First Amendment so as to discredit this Plaintiff and his

discoveries of current and past life on Mars, are unconstitutional and in contravention of their duty to protect the environment and other public resources. Instead, NASA has lied about evidence of extraterrestrial life on Mars and has conspired to harvest and transfer to Earth Martian specimens which will include bacteria, viruses, and other organisms while simultaneously lying to the public so that the public does not become terrified and object to their plans.

86. By secretly planning to transfer Martian organism to Earth, and destroying the reputation this Plaintiff in a conspiracy to discredit his discoveries, NASA and thus the U.S government are acting recklessly, and have failed in their duty of care as trustees of the *Public Trust Doctrine*. Instead, they are secretly planning to place in peril the present and future beneficiaries of the trust property, including, but not limited to, the Plaintiff. Such abdication of duty abrogates the sovereign powers of succeeding members of the Executive Branch and Congress to provide for the survival and welfare of our Nation's citizens and to promote the endurance of our Nation.

**Reckless Endangerment & the Public Trust**

87. NASA's repeated efforts to "*chill speech*" and discredit discoveries of life on Mars, and given that NASA has already acquired Martian soil and air samples that they intend to return to Earth, constitute a violation of the *Public Trust Doctrine* and constitutes *Reckless Endangerment* as defined by *Federal Regulations, 25 CFR § 11.401* - "conduct which places or may place another person in danger of death or serious bodily injury." *10 U.S. Code §914. Art. 114*: when any person " engages in conduct that — (1) is wrongful and reckless or is wanton; and (2) is likely to produce death or grievous bodily harm to another person."

88. According to Federal Law, even if NASA were unsure of if Martian organisms are pathogenic or that Plaintiff would be exposed and die, and even if Plaintiff has not yet been infected, NASA has recklessly sought to place him (and other members of the public) in a situation where he might become infected and die (see *25 CFR § 11.401; 18 US Code § 241; 18 US Code § 1113;  18 U.S. Code § 1117*).

89. The intentional tort exception, *28 U.S.C. § 2680(h)*, does not apply to cases involving abuse of process, misrepresentation, deceit, or interference. NASA is liable (*28 U.S.C. § 1346(b)* as already detailed in the Introduction, History and all preceding paragraphs of this complaint.

90. NASA has acted with "deliberate indifference" and are willfully negligent  (See Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) and failed to exercise reasonable care not to place Plaintiff in harm's way via NASA's Mars Sample Return Program—and this is actionable in Federal Court (L.W. v. Grubbs, 92 F.3d 894, 896, 900 (9th Cir. 1996); Porter v Osborn, 546 F.3d 1131, 1137 (9th

Cir. 2008); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006); City of Canton, 489 U.S. 391 (1989).

91. Plaintiff was harmed and will be harmed and NASA is liable per Title 18: Section 201(b)(2), 201(c)(1)(B)); Title 18, U.S.C. Section 241 and 242; Title 28 U.S. Code § 1331, § 1983; *Bivens v. Six Unknown Narcotics Agents* 403 U.S. 388 (1971); and Title 42 U.S. Code § 1983.

## STANDING

92. Plaintiff has "constitutional standing" as outlined in Federal Rule of Civil Procedure 8(a)(2).

93. Plaintiff's civil and constitutional right have been repeatedly violated by NASA and thus Plaintiff has standing as the case, in its entirely, concerns Federal questions and violations of the U.S. Constitution and Bill of Rights (see 42 USC § 1983; 28 U.S.C. § 1331 and §1343; 42 U.S.C. § 1983).

94. Plaintiff's has standing under the *Public Trust Doctrine*, as NASA's targeted this Plaintiff in order to hide the fact that there is life on Mars, and as NASA's intention to transport these organisms to Earth will endanger this Plaintiff, Plaintiff's family, and the environment in which Plaintiff resides.

95. Plaintiff's civil rights to due process have been violated by Springer Nature America Inc. and Springer Nature Academic Publishing LLC (AKA Springer Nature), and who conspired with NASA to defame, discredit and violate Plaintiff's 1st and 5th Amendment rights and the Public Trust Doctrine. Plaintiff has standing as the case concerns Federal questions and violations of the U.S. Constitution and Bill of Rights (see 42 USC § 1983; 28 U.S.C. § 1331 and §1343; 42 U.S.C. § 1983).

96. Plaintiff has suffered profound injuries and has the right to file suit not only after he has been injured but before and after additional threatened injuries have taken place; and thus Plaintiff standing MedImmune, Inc. v. Genentech, Inc., 549 US 118 - Supreme Court 2007).

**Judicial Standing**

97. Judicial standing is authorized by 5 U.S.C. § 706(2). This Court has federal question jurisdiction (28 U.S.C. § 1331, 42 USCS § 1983)

**Economic Standing**

98. The Supreme Court has ruled that economic interests and financial losses, including potential losses, are protected interests and actionable (Clinton v. New York, 524 U.S. 417, 432 (1998). Likewise, the future damage to this environment gives Plaintiff economic standing (Sierra Club v. Morton, 348 F. Supp. 219 (N.D. Cal. 1972; Clinton v. New York, 524 U.S. 417, 432 (1998); United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669 (1973).

**Standing and Concrete and Particularized Injuries**

99. Defendants have caused injuries which are both "concrete" ("real" not "abstract") and "particularized" as their actions affected "the plaintiff in a personal and individual way." (Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016);  Lujan, 504 U.S. at 560 n.1). Even "intangible injuries" may be "concrete" (Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016).  Plaintiff has documented the concrete harms suffered and that he will continue to suffer injuries particular to himself, and which are not shared equally by others, and this is actionable and demonstrates Plaintiff has standing.

**Standing: Distinct and Palpable Injuries**

100. Defendants caused Plaintiff "distinct and palpable injury" (Warth v. Seldin, 422 U.S. 490 (1975). **Standing and Future Injuries**

101. The threatened injuries are "certainly impending"(Clapper v. Amnesty International USA, 133 S. Ct. 1138, 1143 (2013); MedImmune, Inc. v. Genentech, Inc., 549 US 118 - Supreme Court 2007; Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006)

**Standing and Causation**

102. There is a direct causal connection between the actions of the Defendants and injuries and damages suffered, and future injuries Plaintiff may suffer (*Massachusetts v. Environmental Protection Agency, 549 U.S. 497 (2007*). Plaintiff has provided specific factual allegations of injuries suffered and threatened injuries which directly resulted and will result from the Defendants' conduct, and therefore has shown causation and has standing (Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

**Requested Relief Standing**

103. Plaintiff's injuries can be redressed by a favorable court decision and the awarding of damages

## JURISDICTION AND VENUE

104.  Springer Nature America Inc. and Springer Nature Academic Publishing LLC (AKA Springer Nature), maintain corporate offices at 1 New York Plaza, # 4600, Ny, NY 10004.

105. NASA maintains offices located at the address of  Armstrong, 2880 Broadway, New York, NY 10025.

106.  Judicial jurisdiction is authorized by 5 U.S.C. § 706(2).    This action arises under 42 U.S.C. § 1983 § 1988 and violations of and deprivation of Plaintiff's constitutional rights, the First,  Fifth, and Fourteenth Amendments, and  violations of the Public Trust Doctrine. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction pursuant to 28 U.S.C. 1367 over the related claims.

107.  This Court has jurisdiction over Federal claims pursuant to *28 U.S.C. § 1331 and §1343,  28 U.S.C. § 220, and 28 U.S.C. § 2202* (further relief) and *42 USC 1983*. This Court has original jurisdiction and authority to grant declaratory judgments pursuant to *28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure*.

108.  Supplemental jurisdiction is asserted over state law claims pursuant to *28 U.S.C ' 1367*.

109.  Venue is proper pursuant to *28 U.S.C. 1391(b,e) and Section 552(a)(4)(B), and 5 U.S.C. § 552(a)(2)(A), (3)(A),(C), (6)(A)(ii), (F)*.

110.  This Court has authority to issue the injunctive relief pursuant to *42 U.S.C. § 1983, Federal Rule of Civil Procedure 65*.

111.  This case seeks damages as well declaratory and injunctive relief (*Federal Rule of Civil Procedure 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)*.

112.  Plaintiff is entitled to obtain injunctive relief and damages (see *Alexander v. Sandoval, 532 U.S. 275, 279-80 (2001)*.

113. This case seeks damages as well as injunctive relief (*Federal Rule of Civil Procedure 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 ,570 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)*.

114. The Federal Court has subject matter jurisdiction under *28 U.S.C. § 1338(a)* and jurisdiction pursuant to *28 U.S.C. § 1331)* .

115. This action is also brought pursuant to the United States Constitution and the laws of New York as all Defendants maintain offices in New York whereas Springer Nature America Inc. and Springer Nature Academic Publishing LLC are "organized under the laws of the State of New York in the United States of America."

116.  The Court has "Personal Jurisdiction" over citizens of and corporations headquartered in other countries (and with or without offices in the United States), in that the Plaintiff is the victim and lives in and is a citizen of and was harmed in the U.S.A. (see *United States v. Roberts, 1 F.Supp. 2d 601 (E.D. La. 1998)*, i.e. the passive personality principle and the "effects doctrine" (*United States v. Alcoa, 148 F.2d 416 (2d Cir. 1945) § 402 of the Restatement of Foreign Relations Law of the United States*).

117. This Court has jurisdiction pursuant to *28 U.S.C. § 2201* (creation of a remedy), and *28 U.S.C. § 2202* (further relief) as this action arises under the laws of the United States and New York.

118. This Court has authority to issue the requested injunctive relief pursuant to *42 U.S.C. § 1983*

and Federal Rule of Civil Procedure 65 (see also declaratory judgments pursuant to *28 U.S.C. §§ 2201* and 2202 and Federal Rule of Civil Procedure 57). Jurisdiction is also authorized under *28 U.S.C. § 1332*.

119. Venue is proper pursuant to *28 U.S.C. 1391(b,e) and Section 552(a)(4)(B)*, and *5 U.S.C. § 552(a) (2)(A), (3)(A),(C), (6)(A)(ii), (F)*, in that the Springer / Springer Nature have corporate offices in New York City, and a significant proportion of their income is derived from residents of New York.

59. The Court has jurisdiction over out-of-state defendants per CPLR § 302(a)(2).

60. Supplemental jurisdiction is asserted over state law claims pursuant to 28 U.S.C ' 1367.

## PARTIES

**Plaintiff**

120. Plaintiff Rhawn Joseph, Ph.D. in a resident of 677 Elm St., San Jose, CA 95126.

**Defendants**

121. Springer Nature America Inc. and Springer Nature Academic Publishing LLC (AKA Springer Nature), maintain corporate offices at 1 New York Plaza, # 4600, Ny, NY 10004; and are subject to New York Laws and Federal Laws

122. NASA's NASA Headquarters are located at 300 E Street SW Washington, DC 20546-0001; and are subject to Federal Laws and the United States Constitution and Bill of Rights.

123. NASA also maintains offices at Columbia University with an address of Armstrong, 2880 Broadway, New York, NY 10025; and thus NASA is subject to New York Laws and Federal Laws and the United States Constitution and Bill of Rights.

## CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF: Fraud Against the Court**

124. Plaintiff hereby re-alleges and incorporates the history, facts, authorities, and each of the allegations set forth above.

125. This claim is brought by the Plaintiff against Defendants Springer Nature America Inc. and Springer Nature Academic Publishing LLC (AKA Springer Nature).

126. Defendants "Springer Nature" admit to filing a "click through" html agreement in the case of JvSN, and that they admit they altered, redacted, changed, edited after the case of Joseph v Springer Nature et al was filed (1:20 CV 4672), and to which they added and inserted and included information before filing it with the court and after the case was filed (Exhibit). Defendants "Springer Nature" admit

what they filed is not a legitimate "click through" agreement, and that there is no means for Plaintiff to "click" "check" "sign" or to indicate agreement (Exhibit 15). Instead, they make the ridiculous claim the real agreement is hidden on a server but they can't find it or produce it.

127. Defendants "Springer Nature" have perjured themselves in the case of JvSN and falsified material facts (*USC 18 § 1001, § 1621, § 1623*) and committed Fraud against the Court as as defined by *FRCP 60(d)(3)* and committed fraud as defined by *18 U.S. Code § 1001*: "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

128. As documented by Exhibit 9, 11-14, Defendants Springer Nature and their attorneys (A) modified a hard-copy contract that was created 41 days after Plaintiff filed suit and that was meant to be signed with an actual written signature, (Exhibit 7) (B) and then deleted the date box, signature box, and print name box, (C) and inserted language they could employ as a defense in the State of New York where the case of Joseph v Springer Nature was filed,  (D) and admit they inserted "included" Plaintiff's name (but no signature) and the (wrong) date at the top, i.e. October 29, when email invoice and confirmation of "Open Choice" provides a date of November 6 (Exhibit 1). (E) . Defendants admit they filed an html document that they modified and lacks a click box, check box, agree box, or any means to sign or indicate approval (Exhibit 15), and in so doing Springer Nature obviously committed fraud against the Court and has admitted to this fraud.  They committed this fraud in order to escape liability.

129. Plaintiff has established motive, cause, negligence, duty, breach, standing and damages, and has met the standard for proving "fraud against the Court" as defined by FRCP 60(d)(3).

130. The Courts have relied on its own inherent authority, as well as Federal Rules outside of Rule 60(d)(3), such as Rule 11 to enter a default judgement and to default a litigant who has  committed fraud against the court and corrupts the judicial process (*See Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989); Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir. 1991); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11–12 (1st Cir. 1985); Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983); Eppes v. Snowden, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986); Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 638 N.E.2d 29, 31 (Mass. 1994).*

131. FRCP 60(d)(3), via the "Savings Clause" authorizes the District Court to to provide relief

from the judgment and decision rendered by the District Court in the case of Joseph v Springer Nature et al (1:20 CV 4672), and to issue summary judgment in favor of Plaintiff on all counts as detailed in that case: Infringement of Copyright (1st Claim); Breach of Contract, Tortious Interference (2nd Claim); Libel and Defamation (3rd Claim); Fraud and Unfair and Deceptive Trade Practices (4th Claim); Personal Injury - Intentional Infliction of Emotional Distress, Malice (5th Claim); Negligence (6th Claim); Demand for Injunctive Relief (7th Claim).

132. This Court also has the authority to grant declaratory judgments pursuant to *28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure*.

133. Plaintiff is asking for an additional $1 billion in damages.

**SECOND CLAIM FOR RELIEF: Fraud and Identity Theft by Springer Nature**

134. Plaintiff hereby re-alleges and incorporates the history, facts, authorities, and each of the allegations set forth above.

135. This claim is brought by the Plaintiff against Defendants Springer Nature America Inc. and Springer Nature Academic Publishing LLC (AKA Springer Nature).

136. Defendants "Springer Nature" stole Plaintiff's name and identity and fraudulently inserted "included" his name at the top of fake "click through" html agreement and claimed Plaintiff had agreed to this fake agreement in the case of Joseph v Springer Nature et al. (1:20 CV 4672). Defendants now admit Plaintiff could never have agreed as there is no html coding that would have allowed him to insert his name or to click or agree in any manner (Exhibit 15)

137. The intentional tort exception, *28 U.S.C. § 2680(h)*, does not apply to cases involving abuse of process, misrepresentation, deceit, or interference. NASA is liable (*28 U.S.C. § 1346(b)*)

138. This fraud of identify theft,  is a violation of and is a tort as defined by Article 190 - NY Penal Law, S 190.77-190.80) is subject to civil penalties, and caused Plaintiff profound personal and professional injury and loss of reputation. This fraud is also a tort according to Article 190 - NY Penal Law and constitutes civil fraud according to New York Penal Code: Intentional false representation of a material fact, (ii) this misrepresentation was made with an intent to deceive another party (see also *NY CPLR § Article 30, R3016 (2015) civil fraud New York; 2015 New York Laws CVP - Civil Practice Law & Rules; NY General Business Law section 349*).

139. The Springer Nature Group earn billions of dollars in profits each year and Plaintiff is asking for $500 million in damages. The Court must rule that Springer Nature stole Plaintiff's name and identity,

and authorize the awarding of damages to be specified at trial.

**THIRD CLAIM FOR RELIEF:  Violations of Plaintiff's First Amendment Rights to Free Speech**

140. Plaintiff hereby re-alleges and incorporates the history, facts, authorities, and each of the allegations set forth above.

141. This claim is brought by the Plaintiff against Defendant NASA.

142. In violation of the 1st Amendment (freedom of speech, freedom of the press), NASA has placed government, NASA employees on the Editorial Boards of every recognized journal that publishes research in the field of astrobiology; and these NASA editors act to suppress and censor discoveries documenting evidence of life on Mars. NASA also controls the funding of research, and by withholding funds can prevent research into the possibility of extraterrestrial life and end the career of scientists who persist in conducting research forbidden by NASA.

143. In repeated attempts to thwart and prevent Plaintiff from conducting and publishing his discoveries of life on Mars, NASA harassed, sought to intimidate, made death threats, and its chief of Security made an obscene phone call to Plaintiff consisting of 60 seconds of heavy breathing as a woman laughed in the background, and then after Plaintiff hung up, NASA's Chief of Security called again and demanded Plaintiff come to NASA headquarters to be interrogated. NASA's goons also poisoned "Tiger Wolf" Plaintiff's 15-year old Belgian Shepherd by tossing poisoned mushrooms over Plaintiff's fence after Plaintiff reported the discovery of fungi on Mars; and then approximately one month later surrounded Plaintiff issued death threats and warned him to stop attempting to prove there is life on Mars.

144. Plaintiff's research threatens the "get-rich-scheme" of NASA and its partners; i.e. NASA's Mars Sample Return Program; in which they intend to transport Martian organisms, already harvested on Mars, back to Earth, where they will be stolen and sold thus endangering life on this planet.

145. After Plaintiff's article "*Life on Mars*" was accepted for publication, and generated world-wide attention, NASA conspired with Springer Nature to withdraw the article and to humiliate and embarrass and discredit this Plaintiff. When "Life on Mars was posted at Researchgate and generated over 20,000 readers, NASA conspired with Springer Nature to target his article "*Life on Venus*."

146. NASA and Springer Nature conspired to defame and discredit Plaintiff by violating Plaintiff's copyright and reprinting derogatory statements about Plaintiff in the body of his article and then printing "RETRACTED ARTICLE" on every page and notifying reporters, bloggers, publishers, journal editors, and the scientific community, who understand that articles are only retracted when the author has been found guilty of "severe fraud" as stated on the Springer Nature website.

147. NASA and Springer Nature successfully destroyed Plaintiff's reputation, impugned his research and discoveries and has convinced all legitimate scientific journals to rescind the acceptance of Plaintiff's research after acceptance by the Editors, and to rescind invitations to publish in their journals. Plaintiff has been silenced and his first Amendment rights violated by NASA who conspired with the Springer Nature Group to destroy this Plaintiff and "chill" his speech.

148. Plaintiff's right of action and exercise or benefit from rights secured by the 1st Amendment of the U.S. Constitution has been "chilled" and compromised by NASA; and NASA has done so via threats, intimidation, coercion and conspiring to defame and destroy the reputation of this Plaintiff (*Title 18, U.S.C. Section 242;  Title 28 U.S. Code § 1331, § 1983*). Plaintiff has suffered profound personal and professional injuries.

149. Plaintiff is asking for 1 billion dollars in damages. The Court must rule NASA has violated this Plaintiff's 1st amendment rights to free speech and freedom of the press, and has "chilled" speech and authorized the awarding of damages to be specified at trial.

**FOURTH CLAIM FOR RELIEF:  NASA's Violation of the Public Trust Doctrine**

150. Plaintiff hereby re-alleges and incorporates the facts, authorities, history, and each of the allegations set forth above.

151. This claim is brought by the Plaintiff against Defendant NASA for violations of the Public Trust Doctrine.

152. The "Public Trust Doctrine" is secured by the Ninth Amendment and embodied in the reserved powers doctrines of the Tenth Amendment and the Vesting, Nobility, and Posterity Clauses of the Constitution. These rights protect this Plaintiff's and the rights of present and future generations as pertaining to essential natural resources that are vital to the citizens of our nation including the biosphere.

153. There is evidence, based on NASA official sequential photos, that vast colonies of mushroom-shaped lichens are growing on Mars, and that fungi are emerging from beneath the soil, growing larger,  changing shape, moving to new locations, and shedding spores within which embryonic fungi are growing (Exhibits). It is highly likely that Mars air and soil samples will contain fungi, fungus spores, bacteria, viruses, and other organisms that may pose a catastrophic danger to life on Earth; including invading the human body, consuming internal organs such as the heart and brain, and then erupting from the victims' eyes and head.

154. The Court must rule NASA has entered into a conspiracy to silence speech in service of its planned Mars Sample Return Program, and in so doing and by chilling speech, has recklessly endangered

the future welfare of life on Earth and has violated and intends to violate the Public Trust Doctrine.

155. This Court also has the authority to grant declaratory judgments pursuant to *28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure*

**FIFTH CLAIM FOR RELIEF: NASA's Fraud and Hoaxes**

156. Plaintiff hereby re-alleges and incorporates the facts, authorities, and each of the allegations set forth above.

157. This claim is brought by the Plaintiff against Defendant NASA for  the commission of fraud and hoaxes; i.e. the false claim and hoax that NASA discovered "hematite spheres,"  the faking of data to substantiate this fraud; the cover up of the fact and statements made my NASA administrators and on the NASA website that there is no life on Mars, when there is substantial evidence that proves otherwise whereas NASA has refused to search for or examine Martian specimens for life despite this evidence.

158. In consequence NASA and its personnel have falsified, concealed, and covered up material facts which is a violation of  *18 U.S. Code § 1001*; and committed major fraud against the United States (*18 U.S. Code § 1031*) and has conveyed false information and created hoaxes and this is a violation of *18 U.S. Code § 1038* which also authorizes "civil action" and damages.

159. NASA is also liable under New York Law, as Plaintiff has demonstrated by  clear and convincing evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) resulting damage to the plaintiff. (*Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir.1997); Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V., 17 N.Y.3d 269, 276 (2011); Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011); Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 888 F.Supp.2d 478, 484 (2012)*.

160. The intentional tort exception, *28 U.S.C. § 2680(h)*, does not apply to cases involving abuse of process, misrepresentation, deceit, or interference. NASA is liable (*28 U.S.C. § 1346(b)*)

161. This fraud is also a tort according to *Article 190 - NY Penal Law* and constitutes civil fraud according to New York Penal Code: Intentional false representation of a material fact, (ii) this misrepresentation was made with an intent to deceive another party (see also *NY CPLR § Article 30, R3016 (2015) civil fraud New York; 2015 New York Laws CVP - Civil Practice Law & Rules; NY General Business Law section 349*).

162. Plaintiff is asking for $1 billion in damages.

163. This Court also has the authority to grant declaratory judgments pursuant to *28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure*

**PRAYER FOR RELIEF WHEREFORE,** Plaintiff prays on behalf of himself, for the following:

165. For Fraud Against the Court, and summary judgment against Defendant "Springer Nature" for all causes of action as detailed in the original complaint of Joseph v Springer Nature.

166. Plaintiff is asking for $5 billion in total damages.

167. For Declarative Relief: Defendants Springer Nature have committed Fraud Against the Court. .

168. For Violation, by NASA, of the Public Trust Doctrine.

169. For Declarative Relief: NASA is in violation of the Public Trust Doctrine

170. For all damages legally and/or proximately caused to Plaintiff by Defendants in an amount to be determined at trial;

171. Plaintiff is entitled to future damages;

172. Plaintiff is entitled to "compensatory damages" for emotional and mental distress;

173. The Plaintiff is entitled to General damages, Economic and Special Damages, Pecuniary Damages, Punitive and Exemplary damages;

174. Plaintiff is entitled to declarative and injunctive relief

175. For permanent injunctive relief pursuant to 42 U.S.C. § 1983 and FRCP 65.

176. For other such additional relief as the Court deems proper.


**JURY DEMAND**
Plaintiff demands a trial by jury on all issues so triable.
DATED: January 18, 2022
Respectfully submitted
By: /s/Rhawn Joseph, Ph.D.
RHAWN JOSEPH, Ph.D., Plaintiff


VERIFICATION AND PLAINTIFF'S DECLARATION

I, Rhawn Joseph, Ph.D. am the plaintiff in the above-entitled action. I have read the foregoing first amended complaint and know its contents. I declare the same is true of my own knowledge and those matters that are alleged in the complaint on information and belief, and as to those matters, I believe to be true. I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct to the best of my knowledge and belief.

January 18, 2022
/s/Rhawn Joseph, Ph.D.
Plaintiff: Rhawn Joseph, Ph.D

# EXHIBIT 1 (two documents)

From: **Springer** springerauthorquery@springeronline.com
Subject: Your article in Astrophysics and Space Science (3678): Information Required
Date: October 29, 2019 at 7:34 AM
To: RhawnJoseph@gmail.com





*Springer: My Publication*                                            29.10.2019

visit us at springer.com

## Important Announcement

Dear Author,

Thank you for publishing with Springer. This message is to let you know that your article

- Article title: Life On Venus and the Interplanetary Transfer of Biota From Earth
- DOI: 10.1007/s10509-019-3678-x

has gone into production. Before we can send you your proofs, we have to ask you to provide some additional information. Please go to the following website (you may need to copy and paste the URL into your browser): https://www.springer.com/home?SGWID=0-0-1003-0-0&aqId=3882658&checkval=f105ffcecc986e4123cc343aa9a13873

Please indicate if you would like to:

- order Open Choice, i.e. publish the article as open access. The published version will then become freely available for anyone worldwide in exchange for payment of an open access charge.
- order paper offprints or e-offprints of your article upon issue publication
- order poster of your article with issue cover page, article title and the authorship
- order printing of figures in color in the journal

and to

- transfer the copyright of your article (if you do not order Open Choice)

In order for the publication of your article to proceed you must go to the above website and complete the request. The entire process should take about 10 minutes.

You can help us facilitate rapid publication by returning your answers within 2 working days.

PLEASE NOTE: This link expires WITHIN 5 DAYS after this e-mail has been sent to you so please make sure you complete the request before this date.

This is an automated e-mail; please do not reply to this account. If you have any questions, please go to our help pages.

Thank you very much.

Kind regards,

Springer Author Services



From: **Springer** springerauthorquery@springeronline.com
Subject: Payment of Your Open Choice order for article 10.1007/s10509-019-3678-x
Date: November 6, 2019 at 2:30 AM
To: RhawnJoseph@gmail.com

## ◇ Springer

*Payment of your order*

06.11.2019

visit us at springer.com

### Payment of your Open Choice order

Dear Author,

Your article "Life On Venus and the Interplanetary Transfer of Biota From Earth" (DOI: 10.1007/s10509-019-3678-x) is ready for online publication. Therefore, we ask you to pay your Open Choice order. Please click on the link below and follow the instructions on the page:

https://www.springer.com/home?SGWID=0-0-1003-0-0&aqId=3882658&checkval=f105ffcecc986e4123cc343aa9a13873&pay=oc

Please note that this payment link will only be valid for 28 days.

This is an automated e-mail; please do not reply to this account. If you have any questions, please go to our help pages.

Thank you very much.

Kind regards,
Springer Author Services

### Order Details

| Billing to | Shipping to |
|---|---|
| Rhawn Joseph | Rhawn Joseph |
| RhawnJoseph@gmail.com | RhawnJoseph@gmail.com |
| Astrobiology Associates | Astrobiology Associates |
| Cosmology.com | Cosmology.com |
| 677 Elm St. | 677 Elm St. |
| 95126 San Joseph | 95126 San Joseph |
| USA | USA |

### Deliveries for your article
"Life On Venus and the Interplanetary Transfer of Biota From Earth" (DOI: 10.1007/s10509-019-3678-x)

### Additionally you have ordered

**Open Choice**            ordered

Sales Price (net) 3140,00 USD
tax rate 6,25% VAT 196.25 USD
**Subtotal 3,336.25 USD**

**Total 3,336.25 USD**

### Service Contacts

| Springer Customer Service Center | Springer New York, LCC |
|---|---|
| Tiergartenstr. 15-17 | 233 Spring Street |
| 69121 Heidelberg | New York, NY 10013 |
| Germany | USA |
| phone: +49 6221 345 0 | phone: +1 212 460 1500 or 800-SPRINGER |
| fax: +49 6221 345 4229 | (Weekdays 8:30am - 5:30pm ET) |
| customerservice@springer.com | fax: +1 212-460-1700 |
| | customerservice@springer.com |

© Springer 2019, springer.com

# EXHIBIT 2



# EXHIBIT 3

 **Springer**        www.springer.com

## Read and Publish (Springer Compact) agreements

If your institution has a Read and Publish (Springer Compact) agreement, you may publish your article open access - at no cost to you - in more than 1,900 Springer hybrid journals. In addition, you can enjoy full access to all Springer subscription journal content.

### Agreement details by participating country

Austria
Finland
Germany
Hungary
Ireland
Italy
Manipal
Netherlands
Norway
Poland
Qatar
Sweden
Switzerland
UK

## Benefits for authors

The open access publication fee is covered by your institution.

Higher visibility and greater impact: In Springer hybrid journals, open access articles are accessed 4 times more often on average, and cited 1.6 more times on average.*

Easy compliance with mandates: Many funders require open access, and some take compliance into account when assessing future grant applications.

The copyright remains with you: Most Open Choice articles are published under the liberal Creative Commons Attribution 4.0 International (CC BY) license.



* Within the first three years of publication. Springer Nature hybrid journal OA impact analysis, 2018.

## Springer Compact: part of Open Choice

Springer Open Choice is a hybrid open access model that allows authors to publish open access in subscription-based journals. If your institution has a Springer Compact agreement, you can publish your article open access in Open Choice journals at no cost to you.

Learn more about open access licensing and copyright, manuscript deposition, and more on our open access policies page.

## Springer Nature fully open access agreements

To help authors and institutions choose open access, we now offer agreements that enable institutions to cover open access publishing costs for Springer Nature's fully OA journals. Learn more about our fully open access agreements.

# EXHIBIT 4



Creative Commons > What We Do

# What We Do

Creative Commons is a nonprofit organization that helps overcome legal obstacles to the sharing of knowledge and creativity to address the world's pressing challenges.

**In order to achieve our mission, we:**

- Provide Creative Commons licenses and public domain tools that give every person and organization in the world a free, simple, and standardized way to grant copyright permissions for creative and academic works; ensure proper attribution; and allow others to copy, distribute, and make use of those works
- Work closely with major institutions and governments to create, adopt and implement open licensing and ensure the correct use of CC licenses and CC-licensed content
- Support the CC Global Network, a community initiative working to increase the volume, breadth, and quality of openly available knowledge worldwide
- Steward the Open COVID Pledge, which calls on organizations around the world to make their patents and copyrights freely available in the fight against the COVID-19 pandemic.
- Develop technology like CC Search that makes openly licensed material easier to discover and use
- Offer the Creative Commons Certificate, an in-depth course for people interested in becoming experts in creating and engaging with openly licensed works
- Produce CC Summit, an annual event that brings together an international group of educators, artists, technologists, legal experts, and activists to promote the power of open licensing and global access
- Support global Open Education and GLAM communities

Learn more about Creative Commons through our collection of public reports and financials. For information about CC's funding agreements, please see our Contributions Policy. Certain states require written disclosures for nonprofit organizations soliciting contributions. CC's individual state disclosures are available here.

**In this section**
- About CC Licenses
- FAQ
- Get Involved
- Team
- Downloads
- Bassel Khartabil Fellowships and Memorial Fund
- Global Affiliate Network
- Creative Commons Platforms
- Program areas
- Videos
- Store
- Contact



# EXHIBIT 5 (two pages)

"The licensee may retract"

All News Images Videos Shopping More Tools

About 293 results (0.33 seconds)

https://www.nature.com › documents › snl-ltp-govus DOC

_LTP_ST_11 September 2020 - Nature

Author agrees that **the Licensee may retract** the Article or publish a correction or other notice in relation to the Article if the Licensee considers in its ...

https://www.law.com › newyorklawjournal › almID PDF

UNITED STATES DISTRICT COURT SOUTHERN ... - Law.com

a provision that stated: "The Author(s) agree(s) that **the Licensee may retract** the Article or publish. Case 1:20-cv-04672-JPC-GWG Document 74 Filed 04/12/21 ...

https://www.epj.org › images › stories › copyright › license

Licence to Publish – Open Access

The Author(s) agree(s) that **the Licensee may retract** the Article or publish a correction or other notice in relation to the Article if the Licensee ...

https://www.isrctn.com › page › licence_to_post

Open Access Licence to Post - ISRCTN Registry

The Researcher(s) agree(s) that **the Licensee may retract** the Contribution or publish a correction or other notice in relation to the Contribution if the ...

https://vtechworks.lib.vt.edu › bitstream › handle PDF

Publication agreements : Scientific Reports : nature.com

by AD Hendricks · 2021 — The Author(s) agree(s) that **the Licensee may retract** the. Article or publish a correction or other notice in relation to the.

https://www.scihorizon.com › article › download PDF

Olalekan Okunlola_LTP_ST_8 December 2020 - SciHorizon

Author agrees that **the Licensee may retract** the Article or publish a correction or other notice in relation to the Article if the.

https://www.pucguyana.com › GPL-Licence PDF

chairman pubuc utilities commission - licence - (PUC) Guyana

Oct 1, 1999 — unacceptable to the Licensee, **the Licensee may retract** the request, and there will be no change to the previously existing rates. Billing.
69 pages

https://www.researchgate.net › ... › Anatomy › Teeth

(PDF) Dental history: Teeth as reliquaries - ResearchGate

The Author(s) agree(s) that **the Licensee may retract** the Article or publish a. correction or other notice in relation to the Article if the Licensee ...

https://www.researchgate.net › publication › 351903926_...

Influence of environmental drivers on allergy to pollen grains ...

Jun 1, 2021 — Author agrees that **the Licensee may retract** the Article or publish a correction or other notice in relation. to the Article if the Licensee ...

https://stars.library.ucf.edu › cgi › viewcontent PDF

Energy-Aware Real-Time Scheduling on Heterogeneous and ...

by AA Bhuiyan · 2021 — Author agrees that **the Licensee may retract** the Article or publish a correction or other notice in relation.





9/17/2021                                    "The licensee may retract" - Google Search

Google

"The licensee may retract"                          ✕   🎤   🔍

🔍 All    📰 News    🖼 Images    ▶ Videos    🏷 Shopping    ⋮ More          Tools

Page 2 of 12 results (0.28 seconds)

https://stars.library.ucf.edu › cgi › viewcontent   PDF   ⋮
**Energy-Aware Real-Time Scheduling on Heterogeneous and ...**
by AA Bhuiyan · 2021 — Author agrees that **the Licensee may retract** the Article or publish a
correction or other notice in relation.

https://prism.ucalgary.ca › bitstream › handle › uc...   PDF   ⋮
**Exercise and dietary interventions in a rat model of metabolic ...**
by JL Rios · 2019 — The Author(s) agree(s) that **the licensee may retract** the Article or publish
a correction or other notice in relation to the Article if the.

*In order to show you the most relevant results, we have omitted some entries very similar to
the 12 already displayed.*
*If you like, you can repeat the search with the omitted results included.*

Previous      1   2

Downtown San Jose, San Jose, CA - Based on your past activity - Update location

Help      Send feedback      Privacy      Terms

Joseph v NASA et al                                    38

# EXHIBIT 6

 "the Author(s) grant the Licensee a non-exclusive, irrevocable and sub-licensable right," ✕ 🔍

### Copyright Claims Over Retracted Article Dismissed In New York

Apr 14, 2021 — NEW YORK — Allegations by the author of a copyrighted article about possible extraterrestrial life on Venus that an academic journal ...

https://wp.bsl.nl › uploads › 2021/07 › TSG-Ope... DOC ⋮

### Aanvraag - Bohn Stafleu van Loghum

https://www.casemine.com › ... › 2021 › April ⋮

### Joseph v. Nature | 20 Civ. 4672 - CaseMine

Apr 12, 2021 — Dr. Joseph responded by filing this suit and alleging copyright infringement, breach of contract, libel, and a host of other tort claims against ...

https://www.law.com › newyorklawjournal › almID ⋮

### Joseph v. Springer Nature | New York Law Journal

Apr 27, 2021 — Infringement Breach Suit Dismissed; Claims Are Frivolous; Article's Publication Licensed.

Ad · https://www.uslegalforms.com/ ▾   (877) 389-0141

### Download Asgmt of Rights under - License Agreement by Licensee

Get Access to the Largest Online Library of Legal Forms for Any State. Subscribe Now! Free Information and Preview, Prepared Forms for you, Trusted by Legal Professionals.

Select Forms by State · Affidavit Forms · Real Estate Forms · Landlord Tenant Forms

US Legal Forms Basic - from $8.00/mo - Unlimited Legal Forms · More ▾

# EXHIBIT 7

## *License to Publish*

**SPRINGER NATURE**

| | | |
|---|---|---|
| Journal Name: | Click here to enter text. | (the 'Journal') |
| Manuscript Number: | Click here to enter text. | |
| Proposed Title of Article: | Click here to enter text. | (the 'Article') |
| Author(s) [Please list all named Authors]: | Click here to enter text. | (the 'Author') |
| Corresponding Author Name: | Click here to enter text. | |

**1    Publication**

Springer Nature Limited (the 'Licensee') will consider publishing this article, including any supplementary information and graphic elements therein (e.g. illustrations, charts, moving images) (the 'Article').
Headings are for convenience only.

**2    Grant of Rights**

The grant of rights set forth below applies only if, and to the extent that, all or any part of the Article is not in the public domain by virtue of having been written by a US Government employee in the course of their official duties as defined by the U.S. Copyright Act, 17 U.S. Code § 105.

In consideration of the Licensee evaluating the Article for publication, the Author grants the Licensee the non exclusive, irrevocable and sub-licensable right, unlimited in time and territory, to copy-edit, reproduce, publish, distribute, transmit, make available and store the Article, including abstracts thereof, in all forms of media of expression now known or developed in the future, including pre- and reprints, translations, photographic reproductions and extensions.

Furthermore, to enable additional publishing services, such as promotion of the Article, the Author grants the Licensee the right to use the Article (including the use of any graphic elements on a stand-alone basis) in whole or in part in electronic form, such as for display in databases or data networks (e.g. the Internet), or for print or download to stationary or portable devices. This includes interactive and multimedia use as well as posting the Article in full or in part or its abstract on social media, and the right to alter the Article to the extent necessary for such use. The Licensee may also let third parties share the Article in full or in part or its abstract on social media and may in this context sub-license the Article and its abstract to social media users. Author grants to Licensee the right to re-license Article metadata without restriction (including but not limited to author name, title, abstract, citation, references, keywords and any additional information as determined by Licensee).

If the Article is rejected by the Licensee and not published, all rights under this agreement shall revert to the Author.

**3    Representations**

Author represents that:

a)
    i.    (i) they are US Government employees and have prepared the Article in the course of their official duties, (ii) only if, and to the extent that, any part of the Article is not in the public domain by virtue of subclause (i) above, the Author(s) are the sole owners or have been authorized by any additional copyright owner to grant the rights defined in clause 2,
    ii.    the Article does not infringe any intellectual property rights (including without limitation copyright, database rights or trade mark rights) or other third party rights and no licence from or payments to a third party are required to publish the Article,
    iii.    the Article has not been previously published or licensed,
    iv.    if the Article contains materials from other sources (e.g. illustrations, tables, text quotations), Author has obtained written permissions to the extent necessary from the copyright holder(s), to license to the Licensee the same rights as set out in clause 2  and has cited any such materials correctly;
b)    all of the facts contained in the Article are according to the current body of research true and accurate;
c)    nothing in the Article is obscene, defamatory, violates any right of privacy or publicity, infringes any other human, personal or other rights of any person or entity or is otherwise unlawful and that informed consent to publish has been obtained for all research participants;
d)    nothing in the Article infringes any duty of confidentiality which Author might owe to anyone else or violates any contract, express or implied, of Author. All of the institutions in which work recorded in the Article was created or carried out have authorized and approved such research and publication; and
e)    the signatory who has signed this agreement has full right, power and authority to enter into this agreement on behalf of all of the Authors.

The statements and representations made here are a material consideration and condition of Licensee's performance and the publication of the Article, and Licensee relies on these representations in publishing the Article.

**4    Cooperation**

a)  Author shall cooperate fully with the Licensee in relation to any legal action that might arise from the publication of the Article, and the Author shall give the Licensee access at reasonable times to any relevant accounts, documents and records within the power or control of the Author. Author agrees that the distributing entity is intended to have the benefit of and shall have the right to enforce the terms of this agreement.

b)  Author authorizes the Licensee to take such steps as it considers necessary at its own expense in the Author's name(s) and on their behalf if the Licensee believes that a third party is infringing or is likely to infringe copyright in the Article including but not limited to initiating legal proceedings.

## 5    Author List

Changes of authorship, including, but not limited to, changes in the corresponding author or the sequence of authors, are not permitted after acceptance of a manuscript.

## 6    Contact Information

Author agrees that the Licensee can share Author contact information with internal colleagues at Springer Nature Limited or its affiliates for the purpose of collaborating on additional works for possible publication.

## 7    Corrections

Author agrees that the Licensee may retract the Article or publish a correction or other notice in relation to the Article if the Licensee considers in its reasonable opinion that such actions are appropriate from a legal, editorial or research integrity perspective.

## 8    Governing Law

This agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York, without regard to any conflict of law provisions. The courts of competent jurisdiction in New York, N.Y. shall have the exclusive jurisdiction.

| Signed for and on behalf of the Author | Print Name: | Date: |
| --- | --- | --- |
|  |  |  |

Does the Article and/or the Supplementary Information contain material from third parties (including previously published images/figures)?

☐     Yes (if yes, please ensure copies of the grant of rights are submitted with this form as indicated in the Representations clause 3 part (a))
☐     No

**Note:** if we have requested you to fill out a Third Party Rights table you do not need to attach copies.

Springer Nature Limited, The Campus, 4 Crinan Street, London, N1 9XW, United Kingdom, 785988
v.2.0 -(09_2020)-SNL

# EXHIBIT 8

**SA-89**

```
                    2019-10 Life on Venus LTP
Corresponding Author.....: Joseph, Rhawn
Article Title............: Life On Venus and the Interplanetary Transfer of
Biota From Earth
Journal Title............: Astrophysics and Space Science
DOI.....................: 10.1007/s10509-019-3678-x
Commercial Rights Transferred
Transferred on.: Tue Oct 29 19:08:24 CET 2019

Statement signed by above corresponding author:
"<![CDATA[
<p>
    <span>
        <strong>Licence applicable to the Article:</strong>
    </span>
</p>
<p>
    <span>
        <strong>CC BY: </strong>
        This licence allows readers to copy, distribute and transmit the
Article as long as it is attributed back to the author. Readers are permitted
to alter, transform or build upon the Article, and to use the Article for
commercial purposes. Please read the full licence for further details at - <a

href="https://protect-us.mimecast.com/s/JcXtCn5z6Lhn4gznfKDhUw?domain=creative
commons.org/">https://protect-us.mimecast.com/s/JcXtCn5z6Lhn4gznfKDhUw?domain=
creativecommons.org/</a>
    </span>
</p>

<ol type="1">

    <span>
        <li>
            <strong>Publication</strong><br>
            Springer Nature (the 'Licensee') will consider publishing this
article (including any supplementary information and graphic elements therein
(e.g. illustrations, charts, moving images) (the 'Article'), including
granting readers rights to use the Article on an open access basis under the
terms of the stated Creative Commons licence. Headings are for convenience
only.
        </li>
    </span>

    <span>
        <li>
            <strong>Grant of Rights</strong><br>
            Subject to editorial acceptance of the Article, it will be
published under the Creative Commons licence shown above. In consideration of
```

Page 1

**SA-90**

2019-10 Life on Venus LTP

the Licensee evaluating the Article for publication, the Author(s) grant the
Licensee a non-exclusive, irrevocable and sub-licensable right, unlimited in
time and territory, to copy-edit, reproduce, publish, distribute, transmit,
make available and store the Article, including abstracts thereof, in all
forms of media of expression now known or developed in the future, including
pre- and reprints, translations, photographic reproductions and extensions.
Furthermore, to enable additional publishing services, such as promotion of
the Article, the Author(s) grant the Licensee the right to use the Article
(including any graphic elements on a stand-alone basis) in whole or in part in
electronic form, such as for display in databases or data networks (e.g. the
Internet), or for print or download to stationary or portable devices. This
includes interactive and multimedia use as well as posting the Article in full
or in part on social media, and the right to alter the Article to the extent
necessary for such use. Author(s) grant to Licensee the right to re-license
Article metadata without restriction, including but not limited to author
name, title, abstract, citation, references, keywords and any additional
information as determined by Licensee.
        </li>
    </span>

    <span>
        <li>
            <strong>Copyright</strong><br>
            Ownership of copyright in the Article shall vest in the Author(s).
When reproducing the Article or extracts from it, the Author(s) acknowledge
and reference first publication in the Journal.
        </li>
    </span>

    <span>
        <li>
            <strong>Self-Archiving</strong><br>
            The rights and licensing terms applicable to the version of the
Article as published by the Licensee are set out in sections 2 and 3 above.
The following applies to versions of the Article preceding publication by the
Licensee and/or copyediting and typesetting by the Licensee. Author(s) are
permitted to self-archive a pre-print and an Author's accepted manuscript
version of their Article.
            <ol type="a">
                <li>
                    A pre-print is the Author's version of the Article before
peer-review has taken place ("Pre-Print"). Prior to acceptance for
publication, Author(s) retain the right to make a Pre-Print of their Article
available on any of the following: their own personal, self-maintained
website; a legally compliant pre-print server such as but not limited to arXiv
and bioRxiv. Once the Article has been published, the Author(s) should update
the acknowledgement and provide a link to the definitive version on the
publisher's website: "This is a pre-print of an article published in [insert

Page 2

**SA-91**

```
                    2019-10 Life on Venus LTP
journal title]. The final authenticated version is available online at:
https://protect-us.mimecast.com/s/MZLHCo2OXMUkA5MksNar0o?domain=doi.org/[inser
t DOI]”.

            </li>

            <li>
                An Author’s Accepted Manuscript (AAM) is the version
accepted for publication in a journal following peer review but prior to
copyediting and typesetting. Author(s) retain the right to make an AAM of
their Article available on any of the following, provided that they are not
made publicly available until after first publication: their own personal,
self-maintained website; their employer’s internal website; their
institutional and/or funder repositories. AAMs may be deposited in such
repositories on acceptance, provided that they are not made publicly available
until after first publication. An acknowledgement in the following form should
be included, together with a link to the published version on the publisher’s
website: “This is a post-peer-review, pre-copyedit version of an article
published in [insert journal title]. The final authenticated version is
available online at:
https://protect-us.mimecast.com/s/9wCtCpYzLNi5gqG5uBojSz?domain=dx.doi.org/[in
sert DOI]”.
            </li>
            </ol>

        </li>
    </span>

    <span>
        <li>
            <strong>Warranties</strong><br>
            The Author(s) warrant and represent that:
            <ol type="a">
                <li>
                    (i) the Author(s) are the sole copyright owners or have
been authorised by any additional copyright owner to grant the rights defined
in clause 2, (ii) the Article does not infringe any intellectual property
rights (including without limitation copyright, database rights or trade mark
rights) or other third party rights and no licence from or payments to a third
party are required to publish the Article,  (iii) the Article has not been
previously published or licensed, (iv) if the Article contains materials from
other sources (e.g. illustrations, tables, text quotations), Author(s) have
obtained written permissions to the extent necessary from the copyright
holder(s), to license to the Licensee the same rights as set out in clause 2
and have cited any such materials correctly;
                </li>

                <li>
                    all of the facts contained in the Article are according to
                    Page 3
```

**SA-92**

```
                    2019-10 Life on Venus LTP
the current body of science true and accurate;
                </li>

             <li>
                    nothing in the Article is obscene, defamatory, violates
any right of privacy or publicity, infringes any other human, personal or
other rights of any person or entity or is otherwise unlawful and that
informed consent to publish has been obtained for all research participants;
                </li>

             <li>
                    nothing in the Article infringes any duty of
confidentiality which any of the Author(s) might owe to anyone else or
violates any contract, express or implied, of any of the Author(s). All of the
institutions in which work recorded in the Article was created or carried out
have authorised and approved such research and publication; and
                </li>

             <li>
                    the signatory (the Author or the employer) who has signed
this agreement has full right, power and authority to enter into this
agreement on behalf of all of the Author(s).
                </li>
            </ol>
        </li>
    </span>


    <span>
        <li>
            <strong>Cooperation</strong><br>
            <ol type="a">
                <li>
                    The Author(s) shall cooperate fully with the Licensee in
relation to any legal action that might arise from the publication of the
Article, and the Author(s) shall give the Licensee access at reasonable times
to any relevant accounts, documents and records within the power or control of
the Author(s). The Author(s) agree that the distributing entity is intended to
have the benefit of and shall have the right to enforce the terms of this
agreement.
                </li>

             <li>
                    The Author(s) authorise the Licensee to take such steps as
it considers necessary at its own expense in the Author(s)' name and on their
behalf if the Licensee believes that a third party is infringing or is likely
to infringe copyright in the Article including but not limited to initiating
legal proceedings.
                    Page 4
```

**SA-93**

```
                         2019-10 Life on Venus LTP
                </li>
            </ol>
        </li>
    </span>

    <span>
        <li>
            <strong>Author List</strong><br>
            After signing, changes of authorship or the order of the authors
listed will not be accepted unless formally approved in writing by the
Licensee.
        </li>
    </span>

    <span>
        <li>
            <strong>Edits &amp; Corrections</strong><br>
            The Author(s) agree(s) that the Licensee may retract the Article
or publish a correction or other notice in relation to the Article if the
Licensee considers in its reasonable opinion that such actions are appropriate
from a legal, editorial or research integrity perspective.
        </li>
    </span>

</ol>
]]>"
```

Page 5

# EXHIBIT 9 (Screenshot & PDF)



019-10 Life on Venus LTP Corresponding Author.....: Joseph, Rhawn Article Title...........: Life On Venus and the Interplanetary Transfer of Biota From Earth Journal Title............ Astrophysics and Space Science DOI ................: 10.1007/s10509-019-3678-x Commercial Rights Transferred Transferred on.: Tue Oct 29 19:08:24 CET 2019 Statement signed by above corresponding author: "Licence applicable to the Article:

CC BY: This licence allows readers to copy, distribute and transmit the Article as long as it is attributed back to the author. Readers are permitted to alter, transform or build upon the Article, and to use the Article for commercial purposes. Please read the full licence for further details at - https://protect-us.mimecast.com/s/JcXtCn5z6Lhn4gznfKDhUw?domain= creativecommons.org/

1. **Publication**

Springer Nature (the â€˜Licenseeâ€™) will consider publishing this article (including any supplementary information and graphic elements therein (e.g. illustrations, charts, moving images) (the â€˜Articleâ€™), including granting readers rights to use the Article on an open access basis under the terms of the stated Creative Commons licence. Headings are for convenience only.

2. **Grant of Rights**

Subject to editorial acceptance of the Article, it will be published under the Creative Commons licence shown above. In consideration of the Licensee evaluating the Article for publication, the Author(s) grant the Licensee a non-exclusive, irrevocable and sub-licensable right, unlimited in time and territory, to copy-edit, reproduce, publish, transmit, make available and store the Article, including abstracts thereof, in all forms of media of expression now known or developed in the future, including pre- and reprints, translations, photographic reproductions and extensions. Furthermore, to enable additional publishing services, such as promotion of the Article, the Author(s) grant the Licensee the right to use the Article (including any graphic elements on a stand-alone basis) in whole or in part in electronic form, such as for display in databases or data networks (e.g. the Internet), or for print or download to stationary or portable devices. This includes interactive and multimedia use as well as posting the Article in full or in part on social media, and the right to alter the Article to the extent necessary for such use. Author(s) grant to Licensee the right to re-license Article metadata without restriction, including but not limited to author name, title, abstract, citation, references, keywords and any additional information as determined by Licensee.

3. **Copyright**

Ownership of copyright in the Article shall vest in the Author(s). When reproducing the Article or extracts from it, the Author(s) acknowledge and reference first publication in the Journal.

4. **Self-Archiving**

The rights and licensing terms applicable to the version of the Article as published by the Licensee are set out in sections 2 and 3 above. The following applies to versions of the Article preceding publication by the Licensee and/or copyediting and typesetting by the Licensee. Author(s) are permitted to self-archive a pre-print and an Authorâ€™s accepted manuscript version of their Article.

   a. A pre-print is the Authorâ€™s version of the Article before peer-review has taken place ("Pre-Printâ€). Prior to acceptance for publication, Author(s) retain the right to make a Pre-Print of their Article available on any of the following: their own personal, self-maintained website; a legally compliant pre-print server such as but not limited to arXiv and bioRxiv. Once the Article has been accepted, the Author(s) should update the acknowledgement and provide a link to the definitive version on the publisherâ€™s website: â€œThis is a pre-print of an article published in [insert journal title]. The final authenticated version is available online at: https://protect-us.mimecast.com /s/MZLHCo2OXMUkA5MksNar0o?domain=doi.org/[insert t DOI]â€.

   b. An Authorâ€™s Accepted Manuscript (AAM) is the version accepted for publication in a journal following peer review but prior to copyediting and typesetting. Author(s) retain the right to make an AAM of their Article available on any of the following, provided that they are not made publicly available until after first publication: their own personal, self-maintained website; their employerâ€™s internal website; their institutional and/or funder repositories. AAMs may be deposited in such repositories on acceptance, provided that they are not made publicly available until after first publication. An acknowledgement in the following form should be included, together with a link to the published version on the publisherâ€™s website: â€œThis is a post-peer-review, pre-copyedit version of an article published in [insert journal title]. The final authenticated version is available online at: https://protect-us.mimecast.com/s/9wCtCpYzLNi5gqG5uBojSz?domain=dx.doi.org/[in sert DOI]â€.

5. **Warranties**

The Author(s) warrant and represent that:

   a. (i) the Author(s) are the sole copyright owners or have been authorised by any additional copyright owner to grant the rights defined in clause 2, (ii) the Article does not infringe any intellectual property rights (including without limitation copyright, database rights or trade mark rights) or other third party rights and no licence from or payments to a third party are required to publish the Article, (iii) the Article has not been previously published or licensed, (iv) if the Article contains materials from other sources (e.g. illustrations, tables, text quotations), Author(s) have obtained written permissions to the extent necessary from the copyright holder(s), to license to the Licensee the same rights as set out in clause 2 and have cited any such materials correctly;

   b. all of the facts contained in the Article are according tothe current body of science true and accurate;

   c. nothing in the Article is obscene, defamatory, violates any right of privacy or publicity, infringes any other human, personal or other rights of any person or entity or is otherwise unlawful and that informed consent to publish has been obtained for all research participants;

   d. nothing in the Article infringes any duty of confidentiality which any of the Author(s) might owe to anyone else or violates any contract, express or implied, of any of the Author(s). All of the institutions in which work recorded in the Article was created or carried out have authorised and approved such research and publication; and

   e. the signatory (the Author or the employer) who has signed this agreement has full right, power and authority to enter into this agreement on behalf of all of the Author(s).

6. **Cooperation**

   a. The Author(s) shall cooperate fully with the Licensee in relation to any legal action that might arise from the publication of the Article, and the Author(s) shall give the Licensee access at reasonable times to any relevant accounts, documents and records within the power or control of the Author(s). The Author(s) agree that the distributing entity is intended to have the benefit of and shall have the right to enforce the terms of this agreement.

   b. The Author(s) authorise the Licensee to take such steps as it considers necessary at its own expense in the Author(s)â€™ name and on their behalf if the Licensee believes that a third party is infringing or is likely to infringe copyright in the Article including but not limited to initiating legal proceedings.

7. **Author List**

After signing, changes of authorship or the order of the authors listed will not be accepted unless formally approved in writing by the Licensee.

8. **Edits & Corrections**

The Author(s) agree(s) that the Licensee may retract the Article or publish a correction or other notice in relation to the Article if the Licensee considers in its reasonable opinion that such actions are appropriate from a legal, editorial or research integrity perspective.

019-10 Life on Venus LTP Corresponding Author.....: Joseph, Rhawn Article Title.........: Life On Venus and the Interplanetary Transfer of Biota From Earth Journal Title...........: Astrophysics and Space Science DOI.....................: 10.1007/s10509-019-3678-x Commercial Rights Transferred Transferred on.: Tue Oct 29 19:08:24 CET 2019 Statement signed by above corresponding author: " **Licence applicable to the Article:**

**CC BY:** This licence allows readers to copy, distribute and transmit the Article as long as it is attributed back to the author. Readers are permitted to alter, transform or build upon the Article, and to use the Article for commercial purposes. Please read the full licence for further details at – https://protect-us.mimecast.com/s/JcXtCn5z6Lhn4gznfKDhUw?domain= creativecommons.org/

1. **Publication**

   Springer Nature (the â€˜Licenseeâ€™) will consider publishing this article (including any supplementary information and graphic elements therein (e.g. illustrations, charts, moving images) (the â€˜Articleâ€™), including granting readers rights to use the Article on an open access basis under the terms of the stated Creative Commons licence. Headings are for convenience only.

2. **Grant of Rights**

   Subject to editorial acceptance of the Article, it will be published under the Creative Commons licence shown above. In consideration of the Licensee evaluating the Article for publication, the Author(s) grant the Licensee a non-exclusive, irrevocable and sub-licensable right, unlimited in time and territory, to copy-edit, reproduce, publish, distribute, translate, make available and store the Article, including abstracts thereof, in all forms of media of expression now known or developed in the future, including pre- and reprints, translations, photographic reproductions and extensions. Furthermore, to enable additional publishing services, such as promotion of the Article, the Author(s) grant the Licensee the right to use the Article (including any graphic elements on a stand-alone basis) in whole or in part in electronic form, such as for display in databases or data networks (e.g. the Internet), or for print or download to stationary or portable devices. This includes interactive and multimedia use as well as posting the Article in full or in part on social media, and the right to alter the Article to the extent necessary for such use. Author(s) grant to Licensee the right to re-license Article metadata without restriction, including but not limited to author name, title, abstract, citation, references, keywords and any additional information as determined by Licensee.

3. **Copyright**

   Ownership of copyright in the Article shall vest in the Author(s). When reproducing the Article or extracts from it, the Author(s) acknowledge and reference first publication in the Journal.

4. **Self-Archiving**

   The rights and licensing terms applicable to the version of the Article as published by the Licensee are set out in sections 2 and 3 above. The following applies to versions of the Article preceding publication by the Licensee and/or copyediting and typesetting by the Licensee. Author(s) are permitted to self-archive a pre-print and an Authorâ€™s accepted manuscript version of their Article.

   a. A pre-print is the Authorâ€™s version of the Article before peer-review has taken place ("Pre-Printâ€). Prior to acceptance for publication, Author(s) retain the right to make a Pre-Print of their Article available on any of the following: their own personal, self-maintained website; a legally compliant pre-print server such as but not limited to arXiv and bioRxiv. Once the Article has been published, the Author(s) should update the acknowledgement and provide a link to the definitive version on the publisherâ€™s website: â€œThis is a pre-print of an article published in [insert journal title]. The final authenticated version is available online at: https://protect-us.mimecast.com/s/MZLHCo2OXMUkA5MksNar0o?domain=doi.org/[inser t DOI]â€.

   b. An Authorâ€™s Accepted Manuscript (AAM) is the version accepted for publication in a journal following peer review but prior to copyediting and typesetting. Author(s) retain the right to make an AAM of their Article available on any of the following, provided that they are not made publicly available until after first publication: their own personal, self-maintained website; their employerâ€™s internal website; their institutional and/or funder repositories. AAMs may be deposited in such repositories on acceptance, provided that they are not made publicly available until after first publication. An acknowledgement in the following form should be included, together with a link to the published version on the publisherâ€™s website: â€œThis is a post-peer-review, pre-copyedit version of an article published in [insert journal title]. The final authenticated version is available online at: https://protect-us.mimecast.com/s/9wCtCpYzLNi5gqG5uBojSz?domain=dx.doi.org/[in sert DOI]â€.

5. **Warranties**

   The Author(s) warrant and represent that:

   a. (i) the Author(s) are the sole copyright owners or have been authorised by any additional copyright owner to grant the rights defined in clause 2, (ii) the Article does not infringe any intellectual property rights (including without limitation copyright, database rights or trade mark rights) or other third party rights and no licence from or payments to a third party are required to publish the Article, (iii) the Article has not been previously published or licensed, (iv) if the Article contains materials from other sources (e.g. illustrations, tables, text quotations), Author(s) have obtained written permissions to the extent necessary from the copyright holder(s), to license to the Licensee the same rights as set out in clause 2 and have cited any such materials correctly;

   b. all of the facts contained in the Article are according tothe current body of science true and accurate;

   c. nothing in the Article is obscene, defamatory, violates any right of privacy or publicity, infringes any other human, personal or other rights of any person or entity or is otherwise unlawful and that informed consent to publish has been obtained for all research participants;

   d. nothing in the Article infringes any duty of confidentiality which any of the Author(s) might owe to anyone else or violates any contract, express or implied, of any of the Author(s). All of the institutions in which work recorded in the Article was created or carried out have authorised and approved such research and publication; and

   e. the signatory (the Author or the employer) who has signed this agreement has full right, power and authority to enter into this agreement on behalf of all of the Author(s).

6. **Cooperation**

   a. The Author(s) shall cooperate fully with the Licensee in relation to any legal action that might arise from the publication of the Article, and the Author(s) shall give the Licensee access at reasonable times to any relevant accounts, documents and records within the power or control of the Author(s). The Author(s) agree that the distributing entity is intended to have the benefit of and shall have the right to enforce the terms of this agreement.

   b. The Author(s) authorise the Licensee to take such steps as it considers necessary at its own expense in the Author(s)â€™ name and on their behalf if the Licensee believes that a third party is infringing or is likely to infringe copyright in the Article including but not limited to initiating legal proceedings.

7. **Author List**

   After signing, changes of authorship or the order of the authors listed will not be accepted unless formally approved in writing by the Licensee.

8. **Edits & Corrections**

   The Author(s) agree(s) that the Licensee may retract the Article or publish a correction or other notice in relation to the Article if the Licensee considers in its reasonable opinion that such actions are appropriate from a legal, editorial or research integrity perspective.

]]>"

# EXHIBIT 10

Astrophysics and Space Science

HOME • LOGOUT • HELP • REGISTER • UPDATE MY INFORMATION • JOURNAL OVERVIEW
MAIN MENU • CONTACT US • SUBMIT A MANUSCRIPT • INSTRUCTIONS FOR AUTHORS • PRIVACY

Editorial Manager

Role: Author Username: Rhawn

**Article Type Selection** — Attach Files — Manuscript Data

***Dear Author,***
***if you are submitting a new or revised manuscript please be aware that we have recently updated our submission guidelines (viewable via the Instructions for authors link above). Please ensure your manuscript adheres to these guidelines prior to submission, to avoid requests from the Editorial Office for missing content, delaying Editor assignment.***

***Choose the Article Type of your submission from the drop-down menu.***

**Select Article Type**

Review

**Proceed**



# EXHIBIT 11 (page 1 of Defendants exhibit 2)

Case 21-959, Document 49, 09/11/2020, 3166436, Page96 of 136

## SA-89

Case 1:20-cv-04672-JPC-GWG   Document 57-2   Filed 11/16/20   Page 2 of 6

**No Html Coding. Impossible for Plaintiff to Have Inserted this information**



```
                    2019-10 Life on Venus LTP
Corresponding Author.....: Joseph, Rhawn
Article Title............: Life On Venus and the Interplanetary Transfer of
Biota From Earth
Journal Title...........: Astrophysics and Space Science
DOI.....................: 10.1007/s10509-019-3678-x
Commercial Rights Transferred
Transferred on.: Tue Oct 29 19:08:24 CET 2019
```

```
Statement signed by above corresponding author:
"<![CDATA[
<p>
```

**Requires Signature. Impossible to Sign**

```
    <span>
        <strong>Licence applicable to the Article:</strong>
    </span>
</p>
<p>
    <span>
        <strong>CC BY: </strong>
        This licence allows readers to copy, distribute and transmit the
Article as long as it is attributed back to the author. Readers are permitted
to alter, transform or build upon the Article, and to use the Article for
commercial purposes. Please read the full licence for further details at - <a
href="https://protect-us.mimecast.com/s/JcXtCn5z6Lhn4gznfKDhUw?domain=creative
commons.org/">https://protect-us.mimecast.com/s/JcXtCn5z6Lhn4gznfKDhUw?domain=
creativecommons.org/</a>
    </span>
</p>

<ol type="1">

    <span>
        <li>
            <strong>Publication</strong><br>
            Springer Nature (the 'Licensee') will consider publishing this
article (including any supplementary information and graphic elements therein
(e.g. illustrations, charts, moving images) (the 'Article'), including
granting readers rights to use the Article on an open access basis under the
terms of the stated Creative Commons licence. Headings are for convenience
only.
        </li>
    </span>

    <span>
        <li>
            <strong>Grant of Rights</strong><br>
            Subject to editorial acceptance of the Article, it will be
published under the Creative Commons licence shown above. In consideration of
```

Page 1

# EXHIBIT 12 (page 2 of Defendants exhibit 2)

**SA-91**

```
                    2019-10 Life on Venus LTP
journal title]. The final authenticated version is available online at:
https://protect-us.mimecast.com/s/MZLHCo2OXMUkA5MksNar0o?domain=doi.org/[inser
t DOI]".

              </li>

              <li>
                    An Author's Accepted Manuscript (AAM) is the version
accepted for publication in a journal following peer review but prior to
copyediting and typesetting. Author(s) retain the right to make an AAM of
their Article available on any of the following, provided that they are not
made publicly available until after first publication: their own personal,
self-maintained website; their employer's internal website; their
institutional and/or funder repositories. AAMs may be deposited in such
repositories on acceptance, provided that they are not made publicly available
until after first publication. An acknowledgement in the following form should
be included, together with a link to the published version on the publisher's
website: "This is a post-peer-review, pre-copyedit version of an article
published in [insert journal title]. The final authenticated version is
available online at:
https://protect-us.mimecast.com/s/9wCtCpYzLNi5gqG5uBojSz?domain=dx.doi.org/[in
sert DOI]".

              </li>
          </ol>

        </li>
    </span>

    <span>
        <li>
            <strong>Warranties</strong><br>
            The Author(s) warrant and represent that:
            <ol type="a">
                <li>
                    (i) the Author(s) are the sole copyright owners or have
been authorised by any additional copyright owner to grant the rights defined
in clause 2, (ii) the Article does not infringe any intellectual property
rights (including without limitation copyright, database rights or trade mark
rights) or other third party rights and no licence from or payments to a third
party are required to publish the Article,  (iii) the Article has not been
previously published or licensed, (iv) if the Article contains materials from
other sources (e.g. illustrations, tables, text quotations), Author(s) have
obtained written permissions to the extent necessary from the copyright
holder(s), to license to the Licensee the same rights as set out in clause 2
and have cited any such materials correctly;
              </li>

              <li>
                    all of the facts contained in the Article are according to
                    Page 3
```

Asks To Insert Journal Title. Line is Blank

# EXHIBIT 13 (page 4 of Defendants exhibit 2)

## SA-92

```
                    2019-10 Life on Venus LTP
the current body of science true and accurate;
                </li>

            <li>
                    nothing in the Article is obscene, defamatory, violates
any right of privacy or publicity, infringes any other human, personal or
other rights of any person or entity or is otherwise unlawful and that
informed consent to publish has been obtained for all research participants;
                </li>

            <li>
                    nothing in the Article infringes any duty of
confidentiality which any of the Author(s) might owe to anyone else or
violates any contract, express or implied, of any of the Author(s). All of the
institutions in which work recorded in the Article was created or carried out
have authorised and approved such research and publication; and
                </li>

            <li>
                    the signatory (the Author or the employer) who has signed
this agreement has full right, power and authority to enter into this
agreement on behalf of all of the Author(s).
                </li>
            </ol>
        </li>
    </span>


    <span>
        <li>
            <strong>Cooperation</strong><br>
            <ol type="a">
                <li>
                    The Author(s) shall cooperate fully with the Licensee in
relation to any legal action that might arise from the publication of the
Article, and the Author(s) shall give the Licensee access at reasonable times
to any relevant accounts, documents and records within the power or control of
the Author(s). The Author(s) agree that the distributing entity is intended to
have the benefit of and shall have the right to enforce the terms of this
agreement.
                </li>

            <li>
                    The Author(s) authorise the Licensee to take such steps as
it considers necessary at its own expense in the Author(s)' name and on their
behalf if the Licensee believes that a third party is infringing or is likely
to infringe copyright in the Article including but not limited to initiating
legal proceedings.
                    Page 4
```

**Requires Signature. There is no signature. No place to Sign. Impossible to Sign**

# EXHIBIT 14 (page 5 of Defendants exhibit 2)

Case 21-959, Document 49, 09/01/2021, 3166436, Page100 of 136

**SA-93**

Case 1:20-cv-04672-JPC-GWG   Document 57-2   Filed 11/16/20   Page 6 of 6

2019-10 Life on Venus LTP

> **Requires Signature. There is no place to sign. There is no signature**

```
                        </li>
                    </ol>
                </li>
        </span>

        <span>
            <li>
                <strong>Author List</strong><br>
                After signing, changes of authorship or the order of the authors
        listed will not be accepted unless formally approved in writing by the
        Licensee.
            </li>
        </span>

        <span>
            <li>
                <strong>Edits &amp; Corrections</strong><br>
                The Author(s) agree(s) that the Licensee may retract the Article
        or publish a correction or other notice in relation to the Article if the
        Licensee considers in its reasonable opinion that such actions are appropriate
        from a legal, editorial or research integrity perspective.
            </li>
        </span>

        </ol>
        ]]>"
```

> **No click box. No check box. No "I agree" button. Does not ask for agreement. No html coding for agreement. No signature box. No place to sign.**

Page 5

# EXHIBIT 15 (Cover Sheet & Page 7 of Springer Nature's Admission their Click Through Agreement is Fake)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

----------------------------------------------------- x

RHAWN JOSEPH, PH.D.,

           Plaintiff-Appellant,

  - against -

SPRINGER NATURE AMERICA, INC.,
and SPRINGER NATURE ACADEMIC
PUBLISHING, INC.,

         Defendants-Appellees,

  - and -

SPRINGER NATURE, SPRINGER, a
subsidiary of Springer Nature, ELIAS
BRINKS, JEREMY MOULD, DOES 1-
10, sued in their individual capacities and
as co-conspirators, SPRINGER SCIENCE
+ BUSINESS MEDIA LLC, SPRINGER
VERLAG NEW YORK LLC,

         Defendants.

----------------------------------------------------- x

Docket Number
21-959

## APPELLEE'S COMBINED OPPOSITION TO APPELLANTS' MOTIONS TO SUPPLEMENT THE RECORD AND TO SET ASIDE THE JUDGMENT

Jeremy A. Chase
Robert D. Balin
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Tel.:  (212) 489-8230
Fax:  (212) 489-8340
Email:    jeremychase@dwt.com
         robbalin@dwt.com

*Attorneys for Defendant-Appellees*

terms in the click-through agreements dated October 2019 and April 2020. At most, the existence of Exhibit 6 demonstrates the fact that form contracts get updated from time to time. It is not remotely probative of Dr. Joseph's claim that the agreements for *Life on Venus* and *Life on Mars* were forged.

Exhibit 7 is nothing more than a reformatted version of the click-through agreement governing *Life on Venus* that Defendants presented to the Court. Thus, it is already part of the record. *See* Doc. No. 57-2. Plaintiff argues that the lack of an "accept" button or "check box" on Exhibit 7 to indicate acceptance is somehow proof that he could not have assented to the agreement. Plaintiff is mistaken. The click-through agreement submitted with Defendants' motion to dismiss is a plain-text rendering of the agreement as stored on Defendants' servers following Dr. Joseph's acceptance. *See* Doc. No. 57-2. Plaintiff's name and time-stamp of his clicking his acceptance to the agreement are included at the top of the agreement. *Id.* Exhibit 7, like the click-through agreement attached to Defendants' motion to dismiss (Doc. No. 57-2), does not include the full HTML code and thus does not appear as it would on the live webpage with the accompanying Springer logos, headers, and most importantly here, the "accept" button or "check box." Thus, the absence of an "accept" button or "check box" from Exhibit 7 is a red herring.

Finally, Exhibit 8 is a September 16, 2021 screenshot of the first page of an article submission on the Springer website that Dr. Joseph offers as evidence that no

7

# EXHIBIT 16 (hard copies can also be viewed at):

http://brainmind.com/AAADefendantsClickThroughAgreeement.html

03/12/21 Joseph v Springer Nature Corresponding Judge.....: John P. Cronan CASE NUMBER............1:20 CV 4672: Click Through Agreed on: March 12, 2021 19:08:24 **CLICK THROUGH AGREEMENT**

**CC BY: Federal Judge John. P. Cronan: CLICK THROUGH AGREEMENT TO OBSTRUCT & PERVERT JUSTICE & VIOLATE THE U.S. CONSTITUTION & THE 14TH & 5TH AMENDMENT RIGHTS OF PLAINTIFF RHAWN JOSEPH**

1. In return for $ 1 million in bribes, payable to offshore bank accounts, and laundered through the accounts of his family and relatives, Federal Judge John P. Cronan hereby agrees to obstruct and pervert justice, and violate the U.S. Constitution, and Dr. Joseph's 5th Amendment rights to due process. Judge Cronan agrees to commit fraud against the Court, and ignore and lie about all the evidence, and will accept as valid an obvious fake click through agreement in the absence of any hard copy, signature, or any means to click, check, or signify agreement.
2. Judge Cronan states that he was chosen to serve on the Federal Court by wealthy and powerful special interests, and his job is to serve these wealthy and powerful special interests.
3. Judge Cronan agrees that all Pro Se Plaintiff's, like most Americans, are worthless ignorant trash, no better than peasants and slaves, and not worth his time, and are not deserving of any constitutional rights; and that he, and other members of the Federal Judiciary commonly violate the average American's 14th Amendment rights to equal protection and the 5th Amendment rights to due process; and commonly dismiss Pro Se complaints regardless of the merits.
4. Judge Cronan acknowledges that the payment of substantial bribes is an added incentive, and he enjoys maliciously harming Pro Ses and most Americans who should either be enslaved or exterminated and their children should be pimped and prostituted by the rich and powerful who chose him to become a Federal Judge.
5. Judge Cronan agrees to protect the Springer Nature Group and that he will recruit other Federal Judges, including those on the 2nd Circuit of Appeals, whom, he guarantees commonly violate the rights of most Americans, and will be happy to pervert and obstruct justice in return for substantial bribes.
6. The signatory (of the judge or judges) who has signed this agreement has full right, power and authority to enter into this agreement on behalf of all members of the Federal Judiciary who might hear this case, including those on the 2nd Circuit Court of Appeals.
7. **Cooperation**
   a. The Signee(s) shall cooperate fully with the Springer Nature in relation to all legal action and will take such steps as it considers necessary in all legal proceedings to pervert and obstruct justice.
   b. After signing, changes in this contract will not be accepted unless formally approved in writing.
8. The Signees (s) agree(s) that the signee(s) and their associates on the Federal Judiciary will do everything in their power to obstruct and pervert justice in return for substantial bribes.

]]>"

12/16/21 Joseph v Springer Nature Corresponding Federal Judges.....: Jose A. Cabranes, Raymond J. Lohier, Jr., and Eunice C. Lee; 2n Circuit CASE NUMBER............:21-959: Click Through Agreed on: December 16, 2021 19:08:24 **CLICK THROUGH AGREEMENT**

**CC BY: Federal Judges Jose A. Cabranes, Raymond J. Lohier, Jr., and Eunice C. Lee CLICK THROUGH AGREEMENT TO OBSTRUCT & PERVERT JUSTICE, COMMIT FRAUD AGAINST THE COURT & VIOLATE THE U.S. CONSTITUTION & THE 14TH & 5TH AMENDMENT RIGHTS OF PLAINTIFF RHAWN JOSEPH**

1. In return for $ 4 million in bribes, 1 million to each of the Signees, and payable to offshore bank accounts, and laundered through the accounts of their family and relatives, Federal Judges Jose A. Cabranes, Raymond J. Lohier, Jr., and Eunice C. Lee hereby agree to obstruct and pervert justice, and violate the U.S. Constitution, and Dr. Joseph's 5th Amendment rights to due process. Judges Cabranes, Lohier, Jr., and Lee agrees to commit fraud against the Court, and ignore and lie about all the evidence, and will accept as valid an obvious fake click through agreement in the absence of any hard copy, signature, or any means to click, check, or signify agreement.
2. Judges Cabranes, Lohier, Jr., and Lee states that they were chosen to serve on the Federal Court by wealthy and powerful special interests, and their job is to serve these wealthy and powerful special interests.
3. Judges Cabranes, Lohier, Jr., and Lee agree that all Pro Se Plaintiff's, like most Americans, are worthless ignorant trash, no better than peasants and slaves, and not worth the time of the Court, and are not deserving of any constitutional rights; and that they and other members of the Federal Judiciary commonly violate the average Americans' 14th Amendment rights to equal protection and the 5th Amendment rights to due process; and commonly dismiss Pro Se complaints regardless of the merits.
4. Judges Cabranes, Lohier, Jr., and Lee acknowledge that the payment of substantial bribes is an added incentive, and that they enjoy maliciously harming Pro Ses and most Americans who should either be enslaved or exterminated and their children should be pimped and prostituted by the rich and powerful who chose each of us to become a Federal Judge.
5. Judges Cabranes, Lohier, Jr., and Lee agree to protect the Springer Nature Group and that they will recruit other Federal Judges, including those on the 2nd Circuit of Appeals, whom, they guarantee commonly violate the rights of most Americans, and will be happy to pervert and obstruct justice in return for substantial bribes.
6. The signatory (of the judge or judges) who has signed this agreement has full right, power and authority to enter into this agreement on behalf of all members of the Federal Judiciary who might hear this case, including those on the 2nd Circuit Court of Appeals.
7. **Cooperation**
   a. The Signees shall cooperate fully with the Springer Nature in relation to all legal action and will take such steps as it considers necessary in all legal proceedings to pervert and obstruct justice.
   b. After signing, changes in this contract will not be accepted unless formally approved in writing.
8. The Signees agree that the signees and their associates on the Federal Judiciary will do everything in their power to obstruct and pervert justice in return for substantial bribes and because they hate Pro Ses and most Americans who are worthless trash.

]]>"

DATED: January 18, 2022

Respectfully submitted

By: /s/Rhawn Joseph, Ph.D.

RHAWN JOSEPH, Ph.D., Plaintiff


VERIFICATION AND PLAINTIFF'S DECLARATION

I, Rhawn Joseph, Ph.D. am the plaintiff in the above-entitled action. I have read the foregoing first amended complaint and know its contents. I declare the same is true of my own knowledge and those matters that are alleged in the complaint on information and belief, and as to those matters, I believe to be true. I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct to the best of my knowledge and belief.

January 18, 2022 [date]
/s/Rhawn Joseph, Ph.D.
Plaintiff: Rhawn Joseph, Ph.D